[No. 15254.  In Bank.—April 6, 1895.]

GIOVANNI GIRAUDI, RESPONDENT, *v.* THE ELEC-
TRIC IMPROVEMENT COMPANY OF SAN JOSE,
APPELLANT.

NEGLIGENCE — DANGEROUS POSITION OF ELECTRIC WIRES — LIABILITY OF
ELECTRIC COMPANY.—An electric company, in using the dangerous
force of electricity not generally used, is required to use very great care
to prevent injury to person or property, and it is sufficient proof of neg-
ligence for it not to raise its wires so high above a roof on which they
are placed that those having occasion to go there will not come in con-
tact with them.

ID.—INJURY TO HOTEL SERVANT—CONTRIBUTORY NEGLIGENCE.—Where a
hotel servant, employed as a dishwasher, was required by his master
to go upon the roof of the hotel to assist in placing signs, and was there
injured from contact with electric wires, without knowledge of the loca-
tion of the wires upon the roof, or without recollection of having ever
seen them, or known of their location, he cannot be charged with con-
tributory negligence, as matter of law, on the ground that he ought to
have known the location of the wires, and should have taken care to
avoid them.

ID. — FAILURE TO RECOLLECT POSITION OF WIRES — WANT OF ORDINARY
CARE—QUESTION FOR JURY.—Even if the defendant had previously
observed the wires it would be a question for the jury to say whether
it was the want of ordinary care for him not to have recollected their
location when injured.

ID. — RULE AS TO FORGETFULNESS OF DANGER — REASONABLE CONSTRUC-
TION.—The rule that, if one was aware of a fact which should have put
him upon his guard, he cannot rebut the presumption of contributory
negligence by showing that he momentarily forgot it, must have a rea-
sonable construction; and to forget is not negligence, unless it shows the
want of ordinary care, and that is a question for the jury.

ID.—INSULATION OF WIRES—EFFECT OF MOISTURE—KNOWLEDGE OF PLAIN-
TIFF.—If the insulating material with which the wires were covered
was not in good condition it is the fault of the electric company; and
if the fact that the wires were wet destroyed the insulation for the time,
it cannot be presumed that the effect of moisture upon the insulation is
a fact generally known, and, if there is no evidence tending to show that
plaintiff had knowledge of that fact, he cannot be charged with contrib-
utory negligence in coming in contact with the wires.

ID.—EFFECT OF GRASPING WET WIRE.—The fact that the plaintiff may
have grasped the wire with such force that in its wet condition the in-
sulation was destroyed could not prove contributory negligence.

ID.—EXPERT EVIDENCE—FORM OF QUESTION—HARMLESS ERROR.—An ex-
pert cannot properly be asked whether a structure is a safe one, or
whether certain methods are prudent; but facts may be elicited from
the witness from which such a conclusion inevitably follows; and where
the question asked of an expert witness is objectionable in form, yet

if the answer of the witness gives the facts in full, and explains what methods would have been safe, and all information given by him might have been obtained by proper questions, and it appears that the negligence of the defendant was fully proved by other evidence, the error in the form of the question is not prejudicial.

ID.—USE OF DANGEROUS AGENCY—KNOWLEDGE OF PUBLIC—PRESUMPTION— DUTY TO PROTECT THE IGNORANT.—The mere fact that a dangerous agency is used raises no presumption that the public know enough of its nature to avoid the danger which may arise from its use; and the public—aside from the consumers using the commodity—owe no duty to those introducing it; but it is the duty of those making a profit from the use of a dangerous element, such as electricity, to use the utmost care to prevent injury to any class of people, and they must protect those possessing less than ordinary knowledge of the character of the commodity.

ID.—CONTRIBUTORY NEGLIGENCE—DEGREES OF INTELLIGENCE.—As there are different classes in society, with widely different degrees of intelligence, a person injured is not required to exercise more care than is usual under similar circumstances among careful and prudent persons of the class to which he belongs; and the same care and caution is not required from the mass of ignorant laborers that is exercised by better informed persons.

ID.—IGNORANCE OF DANGER—DEGREE OF CARE REQUIRED—QUESTION FOR JURY.—Where a person injured from contact with electric wires was ignorant of the danger that might result from the contact, a less degree of care is demanded of him than would have been required if he had been informed of the danger; and what constitutes reasonable care must be judged by the circumstances of the case, of which the jury are the judges.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John E. Richards,* and *Richards & Welch,* for Appellant.

Conceding, for the purpose of argument, that the defendant was guilty of negligence in the location of its wires, as claimed by the plaintiff, the uncontradicted evidence proves the plaintiff guilty of contributory negligence which immediately and proximately caused the injury, and which should defeat a recovery by the plaintiff. (*Baltimore etc. R. R. Co.* v. *Whitacre,* 35 Ohio St. 627. See, also, 4 Am. & Eng. Ency. of Law, 22, and cases

cited to note 1, 74, and cases cited to note 2; 1 Shearman and Redfield on Negligence, 4th ed., secs. 56, 112, note 4; Beach on Contributory Negligence, 39, 40, and cases cited.) The court erred in overruling the objections of defendant to the questions asked the expert witness, with reference to what would be reasonable and prudent precautions and practice in the placing and maintaining of electric wires as these were placed and maintained, as these questions call upon the expert witness to find and state whether the defendant was negligent or not, and this finding and verdict is solely within the province of the jury. (Lawson on Expert Evidence, 507–15.) The court erred in its instruction that " What constitutes reasonable care must be judged by the circumstances of this case, of which you are to judge. If he is ignorant of the danger that might result from contact with these wires, a less degree of care was demanded of him than would have been required if he had been informed of such danger." (See Shearman and Redfield on Negligence, 4th ed., sec. 12; Beach on Contributory Negligence, 23, 24, and cases cited.)

*D. W. Herrington,* and *Charles Clark,* for Respondent.

The motion for a nonsuit was properly denied, as, under the facts shown the question of negligence was one for the jury. (Shearman and Redfield on Negligence, 1st ed., sec. 11.) Even if plaintiff knew the preposterous manner in which the defendant managed its business in locating the wires and leaving them without inspection, it does not follow that a nonsuit should have been granted. (*Magee* v. *North Pac. Coast R. R. Co.,* 78 Cal. 430; 12 Am. St. Rep. 69.) This is especially true in a case like the one at bar, where the danger is great, difficult of detection, and the agencies creating the danger are difficult to manage, and are concealed until their fatal effects disclose them. (Thompson on Law of Electricity, sec. 66.) The doctrine of knowledge as affecting caution or negligent acts of the plaintiff, as

given by the court in this case, was proper. (*Parrot* v. *Wells*, 15 Wall. 524.)

TEMPLE, J.—This action is for damages for injuries received through an electric shock caused by the negligence of defendant.

Plaintiff was employed as dishwasher in a hotel and restaurant at San Jose, kept by one Lamolle. The house was lighted by incandescent lights furnished by defendant. The wires passed over the house from the southeast corner, where they descended from the Hensley house to the apex on the roof. At the southeast corner it was twelve feet above the roof. At the ridge of the roof the wires were eighteen inches high, and ran thence diagonally over the northern slope of the roof for sixty feet, at an average height of two feet, to a point on the north firewall, where they descended on the outside of the wall to the transformer. Those wires were part of a circuit of one thousand lights and carried one thousand volts, which was reduced at the transformer to fifty.

The wires were erected while plaintiff was employed at the Lamolle house. Plaintiff did not see the workmen place them over the roof, but saw them where they came down the north wall.

After the wires had been erected plaintiff was on the roof for a few minutes to assist in placing Lamolle's signs. One was at the southeast corner of the building and one at the southwest corner. This was in the daytime, and was the only occasion on which plaintiff had been upon the roof before the accident. At that time the wires were dead, and the plaintiff had no reason for taking note of them, and there is no evidence which tends to show that he did so. He got upon the roof then at the same point as upon the night of the accident, about three feet west of the place from which the wires passed down from the roof to the transformer. He reached the roof by stepladders temporarily placed there for the purpose.

When the wires were erected Lamolle was told by the

workmen of defendant that they were harmless, and he was not consulted as to their location, nor was he asked what use, if any, was made of the roof.

The accident occurred in the night of February 23, 1891. It was dark, stormy, and there was a heavy fall of rain. The signs seemed to be endangered, and Lamolle went upon the roof to secure them, and requested plaintiff to accompany him. Lamolle reached the roof first, having, as he thinks, a lantern, though plaintiff testified that he did not. They desired to reach the southeast corner of the building, to do which they must necessarily go over the wires, or, passing to the west over the roof, pass under them at the southeast corner. Plaintiff, not knowing, or forgetting, the location of the wires, came at once in contact with them. The first contact was with his leg. By the shock he was thrown down, and when Lamolle ran to him he found him grasping one wire with his hand. He was badly burned, both in his hand and leg.

Plaintiff had judgment, and this appeal is from the judgment and from an order refusing a new trial.

The first question is, Was there evidence which tends to show negligence on the part of defendant which contributed proximately to the injury? I think there is. Indeed, this point is not much insisted upon on this appeal. The question is, simply, Was there any evidence which it can be reasonably contended showed such neglect? If the question is open to debate, it must be left to the jury, even though there is no conflict in the evidence. The jury thought such negligence shown by a preponderance of evidence, and I think they correctly found.

Defendant was using a dangerous force, and one not generally understood. It was required to use very great care to prevent injury to person or property. It would have been comparatively inexpensive to raise the wires so high above the roof that those having occasion to go there would not come in contact with them. Not to do so was sufficient proof of negligence to justify the verdict.

If there was any excuse for not so locating the wires, it is on the claim that they were so covered that there was no danger in coming in contact with them.   The accident itself proves that this was not sufficient, *res ipsa loquitur*.   The point most insisted upon here is that plaintiff was guilty of contributory negligence; that he knew, or ought to have known, of the location of the wires, and should have taken care to avoid them.

It is not a case where the doctrine of negligent ignorance can apply.   Plaintiff owed defendant no duty, and no part of his employment required him to know, or gave him opportunity to know.   Unless it can be held that he did in fact know there was no evidence which even tended to show negligence on his part.   He testified that he had never seen the wires before the accident, and did not know of their location.   This probably means that he had no recollection of seeing them.   There was no testimony as to where he went on the roof when he was there to assist in placing the signs, except that he was over the firewall at the southeast corner, and the other at the southwest corner.   He might have passed from one to the other without going near the wires.   At all events, he had no occasion to take note of them.   He had no interest in the matter, and no reason to suppose he would ever be upon the roof again.   It would be a hard measure to hold one responsible for knowing every thing he might observe if he would only take notice, when he had no interest in taking heed.

Can we say then, as matter of law, and against his positive testimony, that he had notice and did know?

Even had he observed the wires during his short visit to the roof it would be a question for the jury to say whether it was the want of ordinary care for him not to have it in mind on that occasion.   It is said that, if one was aware of a fact which should have put him upon his guard, he cannot rebut the presumption of contributory negligence by showing that he momentarily forgot it.   This is true as a general proposition,

but, like all other rules upon this subject, it must have a reasonable construction. To forget is not negligence, unless it shows the want of ordinary care, and it is a question for the jury. Illustrations of this proposition are found in the cases of brakemen who are injured by obstructions over or near the track of the road. They have been allowed to recover, although it is shown that they knew of the obstruction, on the ground that they cannot be expected to retain, at all times, a complete outline of the track, and because, in the hurry of their work, they would not be likely to keep these things in mind. That is, to forget, under the circumstances, did not prove absence of ordinary care. (See *Dorsey* v. *Phillips etc. Co.*, 42 Wis. 583.)

And, again, the wires over the roof were covered with insulating material precisely as the wires in the house were. It is claimed that this was of the very best quality known, and that if it had been perfect it would ordinarily have rendered the wires harmless. If it was not in good condition it was the fault of defendant, and plaintiff cannot be held to have had knowledge of its dilapidated condition. It is claimed that the fact that the wire was wet destroyed the insulation for the time. But we cannot presume that the effect of moisture upon the insulation is a fact generally known, and there was no evidence tending to show that plaintiff had such knowledge.

It is also suggested that plaintiff grasped the wire with such force that in its wet condition the insulation was destroyed. If so, this would not prove contributory negligence, but there is no proof of this except that when he was found he had hold of the wire. His testimony is that he first felt the shock in his leg, and was by such shock thrown down upon the wire. His case must here be judged by the testimony most favorable to him.

2. Plaintiff was allowed, over the objection of the defendant, to ask certain questions of an expert electrician as to what matters should be taken into consideration in

locating electric wires carrying such currents as these in question, and whether it was proper or prudent management to put them so low over a metallic roof. The objection was, that it was the province of the jury to determine such matters and not a proper subject for expert testimony.

The cases do undoubtedly hold that an expert cannot be asked whether a structure is a safe one or whether certain methods are prudent, but all hold that facts may be elicited from the witness from which the conclusion inevitably follows. To illustrate: In *Bemis* v. *Central Vt. R. R. Co.*, 58 Vt. 636, an expert was held not allowed to testify "that it was not prudent to use a certain hoisting apparatus with less than three men, on a stone of two tons heft." Yet the court said there might have been shown "the number of men required, danger in its use by a less number, its safety and adequacy when properly used," and added that then the jurors could as well decide for themselves. Of course the point had been as effectively decided by the expert as though the first question had been answered. The difference is largely one as to the form of the question, and, while I do not mean to say that it is immaterial, or that such an error may never be cause for reversal, I do not think it should be so held here. The answer of the witness gave the facts in full, and explained what methods would have been safe. All this information might have been obtained by proper questions. And then it was not very material here. The negligence of defendant was fully proven by other evidence. In fact, the defense chiefly relied upon the plea of contributory negligence. I think we may safely conclude that the defendant was not injured by the form of the question.

3. Appellant also claims error in refusing two instructions asked by him, and in giving one at the request of plaintiff.

Instruction 4, which was refused, is as follows:

"With reference to the use of the agencies of nature, such as fire, steam, gas, or electricity, the court instructs

you that persons employing such agencies and introducing them into cities in the form of commodities for the public use, while held to a considerable degree of care in the service of these dangerous elements, are not required to use such extraordinary care as, while it would render the element absolutely harmless under all conditions, would also render its supply impracticable. The public, who receive the benefits of convenience and comfort from the supply of the commodity, are presumed to know enough of the nature of the element to avoid the dangers which must arise out of its practical use. The duties of the person supplying the community [commodity?] and of the public using it are reciprocal; each may depend upon the exercise by the other of such ordinary knowledge of the character of the community [commodity?] and such common prudence in its presence as the circumstances of the time and place require."

I think this instruction was properly refused. The mere fact that some persons use a dangerous agency raises no presumption that the public know enough of its nature to avoid the danger which must arise from its use, and the public—aside from the consumers using the commodity—owe no duty to those introducing it; but, on the other hand, it is the duty of those making a profit from the use of so dangerous an element as electricity to use the utmost care to prevent injury to any class of people composing the public which exists in any considerable numbers. They must protect those possessing less than ordinary knowledge of the character of the commodity.

If ordinary knowledge means that of the person of average intelligence, the rule contended for would leave one-half the community partially unprotected. It is true, when the question is as to the negligence of the defendant, he is entitled to be judged in view of the knowledge *generally*, that is almost universally, possessed by the community. The instruction asked had reference only to the alleged contributory negligence of plaintiff.

As to that it has been said: " As there are different classes in society, with widely different degrees of intelligence, the plaintiff was not required to exercise more care than is usual under similar circumstances among careful and prudent persons of the class to which he belongs." (Shearman and Redfield on Negligence, sec. 87.)

In *Mackay* v. *New York Cent. R. R. Co.*, 35 N. Y. 75, the court said: "You would never expect the same care and caution from the mass of ignorant laborers that is exercised by educated, grave philosophers. The mass of men would not expect it, and the law that requires it is absurd. He should be called upon for such care only as a man in his condition in life would ordinarily exert under the circumstances. Does not a juror know what that is as well as a judge? The ignorant and the unwary are entitled to the protection of the law as well as the wise and educated. There is little justice in depriving a man of his life for not exercising more care than his capacity will allow him to exert."

The same rule is applied to the case of children, lunatics, and the blind. Contributory negligence implies fault on the part of the person injured. Sometimes it is negligence to be ignorant. Such was not the case here.

The fifth instruction asked by defendant ought to have been entirely rejected. A portion was given; of this the defendant cannot complain.

At the request of plaintiff the court gave the following instruction:

" What constitutes reasonable care must be judged by the circumstances of this case, of which you are the judge. If he is ignorant of the danger that might result from contact with these wires, a less degree of care was demanded of him than would have been required if he had been informed of such danger."

This is also complained of by appellant. As applied to the facts of this case I think it correct.

The judgment and order are affirmed.

McFARLAND, J., HARRISON, J., GAROUTTE, J., HEN-
SHAW, J., BEATTY, C. J., and VAN FLEET, J., concurred.

Rehearing denied.

BEATTY, C. J., dissented from the order denying a
rehearing.