## Commonwealth Electric Company v. Mary B. Rose, Administratrix.

### Gen. No. 11,135.

1. CONTRIBUTORY NEGLIGENCE—*what does not establish.* Where a person in the employ of one company is killed while in the performance of his duties which necessitated his working about electric wires owned by another company, it is not necessarily contributory negligence for him to have failed to wear rubber gloves or a safety belt and to have stood upon a grounded steel cable instead of upon a wooden cross-arm.

2. ORDINARY CARE—*instruction upon, held not erroneous.* An instruction as follows : " The court instructs the jury that ordinary care as mentioned in these instructions, is that degree of care which an ordinarily prudent person, *with deceased's knowledge or means of knowledge of electrical affairs*, and situated as deceased was, before and at the time of the accident, would exercise for his own safety," held, not erroneous. The particular words complained of are italicized.

3. NEGLIGENCE—*what is, upon the part of an electric company.* It is negligence upon the part of an electric company to fail, contrary to ordinance, to protect an overhead conductor, charged with electric current dangerous to human life, about which the employees of other companies must work in the performance of their duties.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Jud,,e presiding. Heard in the Branch Appellate Court at the March term, 1903. Affirmed. Opinion filed May 17, 1904.

F. J. CANTY and J. C. M. CLOW, for appellant.

JAMES C. McSHANE, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

Plaintiff's intestate was a lineman in the service of the Chicago Telephone Company, which owned and operated wires strung upon poles on the south side of Sixty seventh street. The defendant company operated and controlled a line of wires used for lighting purposes strung on poles on the east side of Parnell avenue. At the southwest corner of Parnell avenue and Sixty-seventh street, in Chicago, the wires used for lighting passed under the telephone wires.

The deceased, at the time he came to his death, was engaged with others in the service of the telephone company, in stringing a new wire on the poles of that company. There was a dead wire, i. e., a wire carrying no current, on the lower cross-arms on the poles of the telephone company, one of which, called pole 2, was at the southwest corner of the streets mentioned, and the other, pole 1, was 112 feet east of pole 2. The telephone men sought to "ferry" the new wire from pole 2 east across Parnell avenue over the wires of the defendant, to pole 1. To effect this the dead wire was cut at pole 2 and the west end of that wire was fastened to the east end of the new wire. It was intended also to cut the dead wire at pole 1 and then use the section of that wire thus cut out as a hauling line to "ferry" the new wire from pole 2 to pole 1. It was the duty of the deceased to cut the dead wire at pole 1, and with the section of that wire between him and pole 2, to "ferry" over from pole 2 the new wire, and fasten it to a pin in the third cross-arm from the bottom on pole 1. He stood on the west side of the pole, twenty-eight feet above the ground, with both feet upon a wire cable half an inch thick, which was attached to the pole twenty-two inches below the lower cross-arm. At a signal from the man on pole 2, the deceased cut the dead wire with one hand and held the end of that wire in the other hand preparatory to carrying it up to the third cross-arm. Immediately after the wire was so cut the deceased fell to the ground and was killed. His administratrix brought an action under the statute

against the company which operated the electric lighting wire and recovered a judgment for $5,000, and the defendant appealed.

The defendant company was granted permission to put and operate its electric lighting wires on and over the streets of Chicago by an ordinance which contained this provision: "All conductors and wires owned and operated by the said company, under the provisions of this ordinance shall be properly insulated, and all overhead conductors used by said company shall be protected by guard wires or other suitable mechanical device or devices."

The first count of the declaration sets out the ordinance and alleged that the defendant negligently, etc., permitted its wires to become and remain improperly and defectively insulated and without guard wires, and by reason thereof a current of electricity was conveyed to the deceased which caused him to fall, etc.

It is conceded that there was no guard wire or any other device to protect the lighting wires of defendant and the evidence is abundant to show that such wires were defectively and improperly insulated.

It is contended that the evidence fails to support the verdict and judgment, first, because it is not shown that the deceased received a current of electricity which caused his fall. This contention cannot be maintained. There is evidence that there was a flame or flash; that the man who was on pole 2 received a shock and let go the wire; that the cable on which deceased stood was grounded; that the lighting wire carried a current of 2000 volts, and that the deceased cried out at the time the flash was seen and almost instantly fell, and from the evidence the jury might properly draw the inference that it was a current of electricity carried to his body from the wires of the defendant, that caused the fall of the deceased; second, because the deceased was guilty of contributory negligence. In support of this contention it is urged that he did not wear rubber gloves nor a safety belt, although both were at hand; that he stood upon the west side when he should have stood on the east

side of the pole; that he stood upon a "grounded" steel cable when he should have stood upon a wooden cross-arm.

Whether the acts and conduct of the deceased were consistent with the exercise of ordinary care on his part for his own safety or amounted to negligence which caused or contributed to his injury and death, were questions of fact for the jury which they have found for the plaintiff and we cannot say that such finding is against the evidence.

Complaint is also made of the following instruction given for the plaintiff: "The court instructs the jury that ordinary care, as mentioned in these instructions, is that degree of care which an ordinarily prudent person, with deceased's knowledge or means of knowledge of electrical affairs, and situated as deceased was, before and at the time of the accident, would exercise for his own safety," because of the words "with deceased's knowledge or means of knowledge of electrical affairs." The instruction obviously refers to the question whether the deceased exercised ordinary care for his own safety. In our opinion the defendant was not prejudiced by the words complained of. The deceased was an experienced lineman and had been a foreman. Acts or conduct on his part might amount to or constitute negligence when the same acts or conduct on the part of one wholly ignorant of electrical affairs would not amount to negligence. It was for the jury to find from all the evidence what the deceased did or failed to do and then to say whether such acts and conduct showed ordinary care on his part for his own safety, or amounted to contributory negligence. This included as well the acts and conduct of the deceased in placing himself in the position in which he was, as his acts and conduct in that position, but we cannot see that the instruction is subject to the criticism that it assumes that the deceased exercised ordinary care in placing himself in the position in which he was at the time he fell.

For the defendant the following instructions were given:

"If the jury believe from the evidence that it was dangerous for Rose to stand upon the strand or messenger cable, which made a perfect circuit between any charged

Commonwealth Electric Co. v. Rose.

electrical agency in the hand of Rose and the ground, and that Rose knew or by the exercise of ordinary care would have known, that standing upon said messenger cable was dangerous, and if the jury further believe from the evidence that a man of ordinary prudence under such circumstances as surrounded Rose, would not have stood upon said messenger strand or messenger cable while holding a telephone wire suspended over electric wires, then the jury must find the defendant not guilty.

"If the jury believe from the evidence that a man of ordinary prudence, exercising ordinary care for his own safety under such circumstances as surrounded Rose at the time of this accident, would have worn and used a safety belt, and that Rose did not at the time of this accident wear a safety belt, and if the jury further believe from the evidence that the death of Rose would have been prevented if the deceased had worn a safety belt, then the jury must find the defendant not guilty."

And in other instructions the question whether the acts or conduct of the deceased in the matter then in hand amounted to contributory negligence, was fairly submitted to the jury under proper instructions.

We do not deem it necessary to consider the many other objections urged against the verdict and judgment in this case. The defendant made no attempt to protect its overhead conductor, charged as it was with an amount of electric current dangerous to human life, by guard wire or by any mechanical device whatever. It is no answer to say that the ordinance did not provide whether the guard wire should be placed above or below the conductor. At this street crossing the telephone wires were above the conductor of the defendant, and the guard wire to protect the conductor from contact with the telephone wire must necessarily be placed above the conductor.

We find in the record before us no reversible error, and the judgment of the Superior Court will be affirmed.

*Affirmed.*