[Civ. No. 6241. Second Appellate District, Division Two.—October 18, 1929.]

CHARLINE SWEATMAN et al., Appellants, v. LOS ANGELES GAS AND ELECTRIC CORPORATION, Respondent.

Afue McDowell for Appellants.

S. W. Guthrie, Samuel Poorman, Jr., Paul Overton and Douglas Van Dyke for Respondent.

BURNELL, J., *pro tem.*—Plaintiffs, who are the surviving widow and minor children of one Robert Fulton Sweatman, appeal from a judgment rendered in favor of respondent corporation upon the sustaining of its demurrer to the second amended complaint without leave to amend. Respondent was the sole defendant upon whom process was

served. The action was to recover damages for the death of Sweatman resulting from an electric shock received by him from respondent's high-voltage wires. The facts set forth in the pleading under discussion, so far as they appear material to the points involved on this appeal, are as follows:

On the 10th of October, 1923, a five-story reinforced concrete building was under construction at the southwest corner of East Eighth and Santee Streets, in the city of Los Angeles. Construction of this building had been begun about July 25th of the same year. Sweatman, on the day he met his death, was working on the fifth floor of this structure, and while moving a metal rod "into and out of" one of the windows, brought it into contact with an uninsulated high-voltage wire "then being, by defendants, placed, maintained, and operated, above a public sidewalk, and about seven feet away from the north side of said building." The complaint further alleges that the work being done by Sweatman and other laborers employed in and about the building was of a character similar to that usually performed by workmen in the construction of buildings in the vicinity "where defendants maintained similarly charged wires at like distances from other concrete buildings," and that "the probability and danger of electrical contact between such workmen and such uninsulated high-voltage electric wires were then and long before then well known to defendants, and unknown to said decedent."

Urging that, contrary to the opinion of the learned court below as expressed by its ruling on the demurrer, the complaint set up a cause of action as against respondent, appellants make the following points:

First, that respondent was obliged so to arrange its wires as to safeguard the workmen employed in the erection of adjacent buildings under the circumstances presented in the complaint:

Second, that under such circumstances the wire in question constituted a dangerous instrumentality which was operated at the risk of respondent; and

Third, that respondent had no exclusive use of the space above the sidewalk and hence cannot avoid liability on the theory that Sweatman "should not have gone there or placed the rod there."

To these contentions the respondent replies:

First, that there is no duty devolving upon an electric company to insulate electric wires suspended from poles in a public street in such a position that it could not reasonably be anticipated that persons would come in contact with them; and

Second, that it appears from the pleading itself that any danger from the location or uninsulated condition of respondent's wire was patent to Sweatman and that, therefore, his heedlessness in making contact therewith by means of an electrical conductor constituted contributory negligence.

The question, therefore, which we are called upon to determine on this appeal has to do with the duty of one maintaining high-voltage electric wires along and over a public highway. That duty is thus defined in *Fairbairn* v. *American River Electric Co.*, 170 Cal. 115 [148 Pac. 788, 789]: "Owing to the highly destructive power of electricity when carried in quantities sufficient for power purposes, and to the fact that it is not visible to the eye or apparent to the other senses, a person or company maintaining an electric power transmission line along, or over a public or private road, is required to exercise a high degree of care in placing the wires so as not to interfere with traffic on the ordinary highway and so as to avoid contact with and injury to any person or object which may reasonably be expected to pass under the wires. (*Giraudi* v. *Electric Imp. Co.*, 107 Cal. 124 [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108]; *Perham* v. *Portland E. Co.*, 33 Or. 478 [72 Am. St. Rep. 730, 40 L. R. A. 799, 53 Pac. 14, 24]; *Fitzgerald* v. *Edison etc. Co.*, 200 Pa. St. 543 [86 Am. St. Rep. 732, 50 Atl. 161]; Crosswell on Electricity, sec. 234.) 'The companies are not insurers of the safety of the public against all dangers arising from the lawful placing in the street of appliances pertaining to the business carried on by them, but they are bound to know the dangers which may naturally be caused by such use of the streets, and to guard against them by the exercise of all the foresight and caution which can be reasonably expected of prudent men under the circumstances.' (1 Joyce on Electricity, sec. 538; *Denver* v. *Sherret*, 88 Fed. 233 [31 C. C. A. 499].) 'The degree of care required of such companies, under the rule that they

must exercise reasonable care, varies according to the facts and circumstances of the case, having in view the serious results which may ensue as a consequence of negligence.' (1 Joyce on Electricity, sec. 438a.) The standard to be attained is that of ordinary and reasonable care, and this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom, would exercise, under the circumstances, in order to prevent injury. Where death may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it.''

In the Fairbairn case, again quoting from the opinion, ''the alleged negligence of the defendant was the maintaining of a power line carrying a heavy current of electricity along a public road with the wires too close to the surface of the ground, and without covering the wires with insulating material, in consequence whereof the boom of a hay derrick which the plaintiffs and others were passing under said wires to enter said road from a lane leading into it, came into close proximity to the wires and electricity therefrom passed down the boom cable into the body of the plaintiff, causing the injuries complained of.'' Reversing a judgment for the plaintiff, the Supreme Court noted that ''the wires were in plain sight, the plaintiff and those with him at the time saw them, guessed at their height above ground, and were endeavoring to bring the top of the derrick boom under the wires without coming in contact with them.'' The lowest of these wires was twenty-seven feet eight and three-fourths inches above the surface of the ground. The court said that the defendant could not be charged with negligence unless, under the circumstances, the placing or maintaining of its wires at that height was negligence and that it was apparent from all the facts in the case that the defendant had no reasonable cause to apprehend that the objects passing along, into or crossing the road would be high enough to come into dangerous proximity to its wires.

The complaint in the instant case does not disclose the height above the street of the wire, contact with which caused the untimely death of Sweatman, but it may be fairly assumed, from the fact that he was working on the fifth story at the time of the fatal accident and that the

wire is alleged to have been "about seven feet away from the north side of said building, and within such short distance from herein mentioned windows then in said building that said wire obstructed the moving into and out of said building and windows, of metal rods," etc., that the wire was a considerable distance from the surface of the street; so far above it, in fact, that no danger was to be apprehended by reason of "contact with and injury to any person or object which (might) reasonably be expected to pass under the wire." ■ The law does not require one who maintains even so dangerous an instrumentality as a highly charged electric wire to anticipate, at his peril, every possible fortuitous circumstance under which some person might make a contact with such wire, resulting in injury or even death. Reasonable care, not insurance against every possible accident, is the measure of his liability. Thus, in *Minter* v. *San Diego Consolidated Gas etc. Co.*, 180 Cal. 723 [182 Pac. 749, 750], it is said: "If, guided by those considerations which ordinarily regulate the conduct of human affairs, an ordinarily prudent person would have had reasonable ground to suspect that the wires so placed would cause injury, the plaintiff can be said to have proved a breach of duty." We do not think that the respondent here can be said to have had reasonable ground to suspect that someone would be apt to make contact with its wire by means of a metal bar extended from a fifth-story window of a neighboring building. To employ the language used by the court in the case last cited: "We are of the opinion . . . that it could not be fairly and reasonably found that an ordinarily prudent person would have considered additional precautions necessary under the circumstances."

The facts in the Minter case bear some analogy to those set forth in the complaint here. The deceased, a boy sixteen years of age, was killed by coming in contact with the defendant's wires while climbing a tree growing on a highway immediately in front of his father's premises. His death was alleged to have been caused by the negligence of the defendant in maintaining imperfectly protected wires at an improper distance from the tree. This tree was a eucalyptus, about two and a half feet in diameter near the ground and about ten inches in diameter at a height of

thirty-five feet. The defendant maintained power wires strung on wooden poles set along the highway on the plaintiff's side of the road. One of these wires, carrying two thousand three hundred volts, was strung at a height of about twenty-seven feet above the ground and at a distance from the tree of from fourteen to sixteen inches. It was insulated, but the insulation did not make it safe to touch, "and was particularly inefficacious when it was wet." Another wire was strung six or eight feet higher and at a distance of about three feet from the tree. This wire carried eleven thousand volts and was not insulated. There was a crotch in the tree between the two sets of wires. Reversing a judgment in the plaintiff's favor, the court referred with approval to the rule laid down in *Fairbairn* v. *American River Electric Co., supra,* and said: "The plaintiff appears to maintain the proposition that because a person might climb the tree without committing a trespass, it was incumbent upon the defendant to assume the burden of keeping its wires so protected that a climber would not be subjected to risk. That, however, is not the test. The question is not what a person might lawfully do, but what the defendant was bound, in the exercise of reasonable prudence, to assume that a person would be likely to do."

In Curtis on Electricity, section 510, it is said: " . . . It is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them. . . . Insufficient or worn insulation is worse than none, for sometimes it gives the appearance of security, when, in fact, it is as dangerous as a bare wire." And the same author, in section 511, says: "It is to be noted that the duty of insulation is not absolute under all circumstances. The imposition of the duty as to places where it reasonably may be anticipated that persons will come in contact with the deadly wire naturally implies that there is no such duty of insulation at other places. Thus it follows that the obligation of the electric company is alternative in its nature. Either the wire must be insulated, or it must be so located as to be, comparatively speaking, harmless."

In *Wetherby* v. *Twin State Gas & Electric Co.,* 83 Vt. 189 [21 Ann. Cas. 1092, 25 L. R. A. (N. S.) 1220, 75 Atl. 8, 10], the decedent met his death as the result of coming

in contact with a high-voltage electric wire maintained by defendant across a bridge two feet three inches out and away from any part of the bridge structure, and a little further than that from the outside of the bridge trusses which extended up and constituted a side of the bridge. Decedent, a boy of thirteen, was sitting upon a guard-rail eight inches in width that ran along the bridge just inside the trusses opposite a cross-arm carrying electric wires, which guard-rail rested on the railroad ties of the bridge and constituted the footwalk thereon. Decedent, in changing his position in some way came in contact with the nearest wire. In holding that plaintiff could not recover the court ruled that the ''duty of providing insulation where it exists is limited to the insulation of wires at points where there is reason to apprehend that persons may come in contact with the wires, and the place of contact under consideration was not such a point.''

In *New Omaha etc. Electric Light Co.* v. *Anderson*, 73 Neb. 84 [102 N. W. 89, 96, 9 Am. Elec. Cas. 306], action was brought for damages for the death of a fireman as the result of an electric shock which he received while lowering a ladder in a public alley at the scene of a fire, by reason of such ladder coming in contact with defendant's electric wires. In reversing judgment in plaintiff's favor the court said: ''If the injury to this fireman had arisen when he was engaged merely in working upon the surface of the street, instead of raising a ladder in the air to touch these wires, another question would be presented. The defendant was only authorized to make such use of the alley as' would not interfere with its use as a highway. It must put no dangerous constructions near enough to the highway to imperil those rightfully passing. Danger to firemen pushing a metallic-bound ladder against the wires it had no duty to provide for, except by furnishing a lineman to disconnect them if deemed necessary by those in charge of the fire extinguishing operations.''

In *Geroski* v. *Allegheny County Light Co.*, 247 Pa. St. 304 [L. R. A. 1915D, 560, 93 Atl. 338, 339], action was brought by a widow to recover damages for the death of her husband, the janitor of a hall. The hall fronted on a public street and upon the front of its roof there was a flagpole. Defendant's ten thousand volt electric wires were strung upon

poles along the side of the street in front of the hall, twelve or thirteen feet horizontally from the building and about twenty-nine feet above the ground. The flagpole extended eight or ten feet higher than the wires. There was a narrow board walk in front of the hall, and defendant's poles were placed between it and the roadway. The decedent was about to raise the flag on the pole. A rope had previously been used for that purpose, but decedent attempted to remove it and replace it with a piece of copper-plated wire. He attached an end of the wire to the rope and began to pull it up. When the wire reached the top of the pole it became entangled, and in trying to loosen it decedent stepped backward from the porch of the hall, where he had been standing, to the board walk and thence into the roadway, pulling and shaking the wire and rope. While so engaged he received the fatal shock as the result of the wire which he was hoisting coming in contact with defendant's electric wires, which, it was alleged, were not properly insulated. In reversing the judgment in favor of plaintiff the court said in part: "Can it be said in the present case that appellant ought to have reasonably anticipated that any person upon the ground would come in contact with its electric wires carried to a height of 29 feet in the air and 12 feet distant from the building? If not, then it follows, under what may properly be regarded as the well-settled doctrine of our cases, that there can be no recovery by plaintiff, and that judgment should have been entered for the defendant. Thus in *Trout* v. *Philadelphia Electric Co.*, 236 Pa. St. 506, 509 [42 L. R. A. (N. S.) 713, 84 Atl. 967, 968], it appeared that a thirteen year old boy was endeavoring to detach a kite from an electric wire on which it had been caught, when he received a shock which resulted in his death. The wire was stretched upon poles, at a distance of about 4 to 6 inches from the outside edge of the cornice of the house. The boy lay down on the cornice and threw a corncob tied to the end of a string over the electric wire and pulled it toward him. When the wire came within reach he touched it and immediately received the electric shock. This court, speaking through Mr. Justice Moschzisker, said (p. 509 of 236 Pa. St., *supra*) : 'The act of the boy in getting hold of the wire was wholly unrelated to any act of the defendant in connection therewith. Had the wire been so close to the house that the boy might naturally have come

in contact with it while playing about the roof, it might be contended that its condition was the proximate cause of his death. But such was not the case; all of the defendant's wires were so far out from the house that they could not possibly have been reached by a full-grown man, much less a boy of thirteen. The boy could have run and played all over the roof without the possibility of his coming in contact with these wires. It was an original, independent act of the deceased which could not reasonably have been anticipated that brought about this most sad accident, and this act was not induced by, or did not follow as a natural sequence to, any negligence of the defendant in connection with its wires. Under such circumstances there could be no recovery, and the defendant was entitled to binding instructions, as requested.' ''

It cannot be said that the death of Sweatman was the natural consequence of the position of respondent's wire with respect either to the surface of the street or the building under process of erection, or to its lack of insulation. Obviously, he could not have touched the wire with his hand while standing on the fifth floor of the building. In other words, the position of the wire rendered it safe in its uninsulated condition under all ordinary circumstances. It was only when decedent interposed a new, independent cause, by swinging out from the wall of the building a metal rod which he was handling therein or drawing in through the window, that he was able to make contact with defendant's electric wire. The interposition of this new and independent cause could not have been anticipated by defendant. It does not occur, in the natural order of things, that workmen engaged in building operations in cities, adjacent to electric wires maintained in the streets by public service companies, are electrocuted by coming in contact therewith. The complaint sets forth that it is the usual thing for such building operations to be conducted in Los Angeles in like proximity to similarly charged electric wires in the streets, but there is no allegation that any similar injury has ever resulted therefrom and therefore no such injury was reasonably to be anticipated. As said in *Oakland Bank of Savings* v. *Murfey*, 68 Cal. 455 [9 Pac. 843, 847]: ''If the wrong and resulting damages are not known by common experience to be usually and naturally in sequence, and the damage does not, according to the ordinary course of events,

follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated, as cause and effect, to support the action.'' And as stated in *Polloni* v. *Ryland,* 28 Cal. App. 51 [151 Pac. 296, 298]: ''An injury that is not the natural consequence of negligence, which could not have resulted from it but for the interposition of some new, independent cause that could not have been anticipated, is not actionable.''

We have carefully examined the authorities cited and relied on by appellants; they are all distinguishable from the case at bar and none of them is in conflict with the principles hereinabove discussed. Thus in *Wales* v. *Pacific Electric Motor Co.,* 130 Cal. 521 [62 Pac. 932, 1120], the wire which caused the injury was being maintained in violation of an ordinance; in *Citizens' Electric etc. Co.* v. *Bell,* 70 Ohio St. 482 [72 N. E. 1155], a broken feed wire, connected at one end with the defendant's main wire, had been negligently left hanging down a pole with its exposed end lying in the grass of the parking in the sidewalk, where a seven year old child came in contact with it; in *Giraudi* v. *Electric Imp. Co.,* 107 Cal. 120 [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108], the fatal wire was, at the point where the accident occurred, but two feet above the roof of a hotel building, where the plaintiff came in contact with it while securing his employer's signs at night and during a heavy storm; and in *Commonwealth Electric Co.* v. *Rose,* 114 Ill. App. 181 (affirmed in 214 Ill. 545 [73 N. E. 780]), electric light wires were maintained in a manner contrary to an ordinance of the city, resulting in the death of a telephone lineman by reason of the telephone wire on which he was working coming in contact therewith. While all of these cases are decided, at least in part, upon the theory that it is the duty of one maintaining electric wires to insulate or otherwise protect them from contact at places where others may reasonably be expected to go, none of them enunciates a rule that such duty extends to an insurance against all risk, whether reasonably to be expected or not.

The learned trial court did not err in its ruling on the demurrer and the judgment must be affirmed.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.