[No. 21746-9-III.   Division Three.   October 30, 2003.]

LARRY D. BRIGGS, ET AL., *Appellants*, v. PACIFICORP, *Respondent*.

*James S. Scott* and *Ralph D. Scott* (of *Scott & Scott*), for appellants.

*Gregory S. Lighty* (of *Halverson Applegate, P.S.*), for respondent.

KURTZ, J. — While he was working on a commercial advertising sign, Larry D. Briggs received an electrical shock when his boom cable swung out and touched an uninsulated electrical distribution line owned by Pacificorp. Mr. Briggs was injured, and he sued Pacificorp under the theories of strict liability and negligence. Pacificorp successfully moved for summary judgment, and the case was dismissed. Mr. Briggs appeals. We affirm the judgment of the trial court that reasonable minds could not differ that Pacificorp did not breach any duty owed to Mr. Briggs.

## FACTS

Larry Briggs, a licensed electrician, owned and worked in a business that installed and repaired outdoor advertising signs. He had been involved in this business for over 10 years.

Mr. Briggs was hired by Godfrey's espresso stand in Yakima to replace light bulbs in the sign Mr. Briggs had installed several years before. Mr. Briggs had replaced the bulbs in the sign on at least two prior occasions.

The espresso stand sign is located adjacent to electrical distribution lines which are owned, maintained, and oper-

ated by Pacificorp. These power lines carry a voltage of 7,200 volts wire to ground and 12,470 volts wire to wire. These lines are not insulated, and no warning signs are posted in the area relating to the dangers associated with high voltage electrical lines. The lines are located approximately 15 to 20 feet diagonally north of the Godfrey's sign.

On May 23, 1999, Mr. Briggs went to Godfrey's to replace the bulbs. He parked his ladder truck adjacent to the sign. Next, he raised the ladder so that he could perform maintenance on the sign. The raised boom-ladder was approximately 10 to 11 feet from the closest power line.

Mr. Briggs testified in his deposition that he usually followed a general procedure in replacing bulbs. First, he would remove the retainers at the end of the sign and remove the plastic facing from the sign. Next, he would secure the facing with a clamp that is attached to the boom-ladder by cable and then lower the facing to the ground. After the facing was on the ground, he would replace the bulbs, then raise the facing using the cable and clamp, replace the facing, and reinstall the end clamps. The final step was to lower the boom-ladder down to the truck.

On this day, however, Mr. Briggs raised the boom-ladder, removed the end retainers and the plastic facing from the sign. When he reached down for the clamp at the end of the boom cable, the cable swung out toward the street and touched a 7,200-volt power line. Mr. Briggs received a shock and slumped against the side of the work basket. He has no memory of the events that took place after he was shocked, until several days later.

As a result of receiving the electrical shock, Mr. Briggs was injured. He sued Pacificorp, alleging that it was strictly liable for his injuries due to the inherently dangerous nature of the electrical power lines. Mr. Briggs also alleged, in the alternative, that his injuries were the proximate result of Pacificorp's "negligence with regard to the design, installation, maintenance and/or inspection of said transmission line," as well as Pacificorp's failure to provide adequate warnings. Clerk's Papers (CP) at 127.

Pacificorp moved for summary judgment. The court granted the motion and dismissed the case. Mr. Briggs appeals.

## ANALYSIS

■ Mr. Briggs contends that the trial court erred by granting Pacificorp's summary judgment motion. We review summary judgment decisions de novo. *Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co.*, 142 Wn.2d 431, 434-35, 13 P.3d 622 (2000), *cert. denied*, 532 U.S. 1002 (2001). In doing so, we view the facts in the light most favorable to the nonmoving party. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

■ Mr. Briggs alleged that his injuries were the proximate result of Pacificorp's negligence related to the design, installation, maintenance and/or inspection of its transmission line, as well as Pacificorp's failure to provide adequate warnings. "In order to prove actionable negligence, a plaintiff must establish the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury." *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998).

■ On appeal, Mr. Briggs contends that whether Pacificorp breached its duty to him was a question of fact and not properly decided on summary judgment. The existence of a duty is a question of law, while breach and proximate cause are generally questions of fact for the jury. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Once it is determined that a legal duty exists, it is generally the jury's function to decide the foreseeable range of danger, thus limiting the scope of that duty. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933, 653 P.2d 280 (1982). In other words, given the existence of a duty, the scope of that duty under the particular circumstances of the case is

for the jury. *Id*. However, breach and proximate cause may be determined as a matter of law where reasonable minds could not differ about them. *Hertog*, 138 Wn.2d at 275.

In this case, Mr. Briggs contends that Pacificorp breached its duty to him by failing to insulate, bury, or relocate the distribution lines. Pacificorp, on the other hand, responds that Mr. Briggs failed to offer any evidence that its duty included insulating, burying, or relocating the wires, and instead argues that it fulfilled its duty by locating the power lines at a height and location where the lines could not be reached through ordinary means.

■■ An electrical supplier's duty of care varies according to the danger posed by the utility's activity. *Keegan v. Grant County Pub. Util. Dist. No. 2*, 34 Wn. App. 274, 279, 661 P.2d 146 (1983). "When the utility's operation exposes the public to serious accidents or death, the utility is held to the highest degree of care human prudence is equal to." *Id*. In this case, Pacificorp acknowledges that it "is held to a very high degree of care with regard to its transmission of electricity." Resp't's Br. at 4.

In asserting that Pacificorp breached its duty by failing to protect him from the uninsulated wires, Mr. Briggs relies primarily upon *Scott v. Pac. Power & Light Co.*, 178 Wash. 647, 35 P.2d 749 (1934). In *Scott*, an employee of the Liberty Theatre Company of Yakima was injured by an electrical current while working on the roof of the theater. The Pacific Power company maintained uninsulated distribution electrical lines carrying 6,600 volts that were located between 10 and 20 inches horizontally distant from the building, and 24 to 30 inches higher than the coping of the roof.

The power company argued that the plaintiff failed to establish negligence because the construction was in accord with the then-standard engineering practice, no statute was violated, and the company did not breach the care it was to exercise related to the maintenance of the wires.

The *Scott* court took note of an annotation that found "great uniformity in the decisions to the effect that one

maintaining a high tension electric transmission line without proper insulation, at places where workmen are likely to come into contact with it to their injury, is liable for the injury." *Scott*, 178 Wash. at 652 (quoting 14 A.L.R. 1024). The court then conducted an exhaustive survey of cases from across the country that supported that holding.

The *Scott* court ultimately found that the evidence was sufficient to support plaintiff's claim for negligence, and the question was properly sent to the jury to determine if the power company failed to exercise reasonable care in guarding against the injury. *Scott*, 178 Wash. at 658. The question that is raised by *Scott* is whether the power lines at issue were located in such a place that workmen were likely to come in contact with the lines. The cases reviewed in *Scott* all involved lines that could be reached by one working on a balcony,[1] house,[2] or building.[3]

■ The record indicates that in this case, the line was approximately 15 to 20 feet diagonally north from the espresso sign. In the cases noted in *Scott*, the lines were all within touching distance of a worker, or could be inadvertently touched while carrying out one's business on the premises. These facts are distinguishable in that the lines near Mr. Briggs were not attached to the sign, or so close that while working on the sign he could inadvertently reach out and touch the lines. Rather, the lines were between 15 and 20 feet from the sign. The lines were contacted because Mr. Briggs's equipment somehow failed and swung away from him.

Thus, Mr. Brigg's reliance upon *Scott* is misplaced. That case and the cases cited within do not support his position that Pacificorp breached its duty to him by failing to insulate, bury, or relocate the wires. Moreover, Mr. Brigg's own expert, Virgil Brown, testified that Pacificorp did not

---

[1] *E.g., Thomas v. Wheeling Elec. Co.*, 54 W. Va. 395, 46 S.E. 217 (1903).

[2] *E.g., McLaughlin v. Louisville Elec. Light Co.*, 100 Ky. 173, 37 S.W. 851 (1896).

[3] *E.g., Giravdi v. Elec. Improvement Co. of San Jose*, 107 Cal. 120, 40 P. 108 (1895).

have a legal duty under a regulation or code to insulate, bury, or relocate the lines. As a result, Mr. Briggs has failed to cite to any authority that would require Pacificorp to insulate, bury, or relocate its lines.

*Frisch v. Public Utility District No. 1 of Snohomish County*, 8 Wn. App. 555, 507 P.2d 1201 (1973) is instructive. In that case, Mr. Frisch received an electrical shock while he was unloading some bricks near his property with a mobile truck crane. A power line was overhead at a height of 31 feet. At some point, the cable on the boom of a mobile truck crane broke and wrapped around the power line, energizing the cable, boom, and truck. Mr. Frisch was touching the boom and was thrown under the truck and severely injured by the electrical charge.

In that case, the evidence indicated that the power company had surpassed all of the then-existing clearance requirements and standards related to the placement of the lines. *Id.* at 557-58. The court dismissed the case on summary judgment. On appeal, the court quoted an Arizona case and stated that a utility company is not responsible for accidents which cannot be anticipated:

> "But where an electric company maintains its wires at a height at which they would not come in dangerous proximity to such persons or things as it reasonably ought to anticipate might rightfully come under or near them, it is not chargeable with negligence because some one doing an act which it had no reason to expect suffers an injury which might not have been sustained if the wires had been safeguarded in a different manner from that in which they were."

*Id.* at 557 (quoting *Salt River Valley Water Users' Ass'n v. Compton*, 39 Ariz. 491, 499, 8 P.2d 249 (1932)).

In this case, Pacificorp's duty was to protect people from coming into contact with its highly charged electrical wires. It fulfilled this duty by locating its wires high above normal daily activity and traffic. In other words, Pacificorp's duty was to locate the lines in such a place that workers were not likely to come into contact with the lines. It did so—the

nearest power distribution lines to the espresso sign were between 15 and 20 feet away.

Moreover, under the Washington Administrative Code, Mr. Briggs was required to maintain a distance of at least 10 feet between his equipment and the power lines. The code requires certain minimum safety standards be followed by all workers engaged in certain types of work. In the subsection relating to work with cranes, derricks and hoists, the code requires that workers allow a 10-foot clearance for conductors carrying 50,000 volts or less. WAC 296-155-525(3) requires:

> (e) Except where electrical distribution and transmission lines have been deenergized and visibly grounded at point of work or where insulating barriers, not a part of or an attachment to the equipment or machinery, have been erected to prevent physical contact with the lines, equipment or machines shall be operated proximate to power lines only in accordance with the following:
>
> (i) For lines rated 50 kV. or below, minimum clearance between the lines and any part of the crane or load shall be 10 feet.

In this case, Pacificorp fulfilled its duty of the highest care to Mr. Briggs by locating its electrical distribution wires where a worker would not be likely to come in contact with the lines. The location of these lines was high above the ground, and between 15 and 20 feet from the espresso sign. Mr. Briggs failed to establish that Pacificorp breached its duty by failing to bury, insulate, or relocate its power distribution lines. Reasonable minds could not differ about whether Pacificorp breached its duty to Mr. Briggs. The court did not err in granting summary judgment.

Affirm.

KATO, A.C.J., and SWEENEY, J., concur.

Reconsideration denied February 10, 2004.

Review denied at 152 Wn.2d 1018 (2004).