GEORGE WETHERBY'S ADMR. v. TWIN STATE GAS COMPANY.

Special Term at Brattleboro, November, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 19, 1910.

*Electricity—Injuries Incident to Production—Licensees—Liability—Negligence—Disposition of Case.*

Where an electric company carried its three uninsulated high tension wires over a river on wooden arms projecting from the side of a railroad bridge and attached to the floor beams thereof, the wire nearest the bridge being two feet and three inches therefrom, and pedestrians, to the knowledge of the electric company, crossed the bridge by stepping from tie to tie or walking on the guard rail, there was nothing in respect of the wires or their location that

rendered such use dangerous, or made the electric company responsible for the death of a child who, after sitting on the guard rail of the bridge opposite one of the wooden arms, changed his position and came in contact with a live wire and was killed by the electric shock, since the occurrence could not have reasonably been anticipated.

Proof that persons used the bridge to fish from, and whence to view the scenery, and that children played on it, but without proof that the railroad company or the electric company had knowledge thereof, did not show that such persons and children were licensees, and suggest to the electric company the likelihood of any one coming in contact with the electric wires.

The duty to insulate high tension electric wires is limited to points where there is reason to apprehend that a person may come in contact with the wires.

Though the business of transmitting electricity must be conducted with a very high regard to the safety of the public, and the thoughtlessness and misjudgment of children of tender years must be taken into account, yet an electric company is not an insurer of the safety of children, and need not exercise a degree of prudence and foresight beyond what a prudent man would exercise in like circumstances.

In an action for the death of plaintiff's intestate by contact with an electric wire, where it appears that the situation and circumstances surrounding the accident were on trial fully shown in evidence, and that the trial court erred in denying defendant's motion for a directed verdict, the Supreme Court will reverse the judgment rendered on the verdict for plaintiff, and enter judgment for defendant.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1908, Windham County, *Miles,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. At the close of all the evidence the defendant moved for a directed verdict. Motion overruled, to which the defendant excepted. The opinion states the case.

*Gibson & Waterman, Clarke C. Fitts* and *Harold E. Whitney* for the defendant.

Defendant was bound only to exercise the care of a prudent man in the circumstances, and was not bound to render its property safe for any purpose for which it should not anticipate it would be used. *Armstrong* v. *Medbury,* 67 Mich. 250, 11 Am. St. Rep. 585; *Keefe* v. *Narragansett Elec. Lighting Co.,* 43 Atl. 542.

The evidence fails to show due care on the part of the intestate. "The owner of real property is entitled to the exclusive use and enjoyment of the same and is not liable to others for injuries occasioned by its unsafe condition, when the person receiving the injury was not at or near the place of danger by lawful right, and when the owner has neither expressly nor impliedly invited him there nor allured him by attractions or inducements or held out in some way." *Sweeney* v. *Old Colony etc. R. R. Co.,* 10 Allen 368; *Bennett* v. *Railroad Co.,* 102 U. S. 577; *Carleton* v. *Franconia Steel Co.,* 99 Mass. 216; Cooley on Torts, 605, 606; *Pierce* v. *Whitcomb,* 48 Vt. 127; *Pittsburg etc. R. R. Co.* v. *Bingham,* 29 Ohio St. 367; 1 Thompson on Negligence, 303, §3; *Johnson* v. *Lighting Co.,* 110 N. W. Rep. 711; *Stark* v. *Traction Co.,* 141 Mich. 575; *Freeman* v. *R. R. Co.,* 66 N. Y. Supp. 1052; *McAllister* v. *Jung,* 112 Ill. App. 138; *Holbrook* v. *Aldrich,* 168 Mass. 15, 36 L. R. A. 493; *Grindley* v. *McKetchem,* 163 Mass. 494; *McGinnis* v. *Butler,* 159 Mass. 233; *Morrissey* v. *Eastern R. R. Co.,* 126 Mass. 377; *Hughes* v. *Railway Co.,* 71 N. H. 279; *Frost* v. *Eastern Railway Co.,* 64 N. H. 220; *Uttermohlen* v. *Company,* 55 L. R. A. 911; *Ritz* v. *Wheeling,* 43 L. R. A. 148; *Martin* v. *Petit,* 117 N. Y. 118; *State* v. *Railroad,* 52 N. H. 528; *Severy* v. *Nickerson,* 120 Mass. 306; *Morgan* v. *Hallowell,* 57 Me. 375; *McAlpin* v. *Powell,* 70 N. Y. 126; *St. L. etc. Co.* v. *Bell,* 81 Ill. 76; *Gavin* v. *Chicago,* 97 Ill. 66; *Wood* v. *School District,* 44 Iowa 27; *Gramlich* v. *Wurst,* 86 Pa. St. 74; *Cauley* v. *P. C. etc. Ry. Co.,* 95 Pa. St. 398; *Gillespie* v. *McGowan,* 100 Pa. St. 144; *Mangan* v. *Atterton,* L. R. 1 Ex. 239; *Knight* v. *Abert,* 6 Pa. St. 472; *Frederick* v. *Illinois Central R. R. Co.,* 46 La. Ann. 1180, 15 So. 413; *Sullivan* v. *B. & A. R. R.,* 156 Mass. 378; *Metcalf* v. *Cunard Steamship Co.,* 147 Mass. 66; *Heinlein* v. *Boston etc. R. R.,* 147 Mass. 136; *Reardon* v. *Thompson,* 149 Mass. 267; *Daniels* v. *New York etc. R. R.,* 154 Mass. 349; *Redigan* v. *Boston & Maine R. R.,* 155 Mass. 44; *Sutton* v. *West Jersey etc. Co.,* 73 Atl. 252; *Brainard* v. *Van*

*Dyke,* 71 Vt. 360; *Matthews* v. *Bensel,* 51 N. J. L. 30; *Taylor* v. *Haddonfield etc. Co.,* 65 N. J. L. 102; *Graves* v. *Washington Water Power Co.,* 11 L. R. A. (N. S.) 452; *Decker* v. *Stimson Mill Co.,* 31 Wash. 522; *Johnston* v. *Northern Lumber Co.,* 42 Wash. 230; *Daffron* v. *Majestic Laundry Co.,* 41 Wash. 65; *Hughes* v. *B. & M. R. R.,* 71 N. H. 279; *Clark* v. *Manchester,* 62 N. H. 577; *Marshall* v. *Dalton Paper Mills,* 82 Vt. 489.

*Chase & Daley* for the plaintiff.

The defendant was bound to exercise the highest degree of care; it was bound to know and consider that men, women and children crossed over, stood upon, fished from, and played upon the bridge; and so to place and protect its wires that the lives of those whom the railroad company permitted to use the bridge would not be endangered by them. Note in *Temple* v. *McComb City Elec. Light and Power Co.,* 11 L. R. A. (N. S.) 449; *Consolidated Elec. L. & P. Co.* v. *Healy,* 70 Pac. 884; *Daltry* v. *Media Elec. L. H. & P. Co.,* 57 Atl. 833; Note in *Lepnick* v. *Gaddis,* 26 L. R. A. 686; *Hydraulic Works Co.* v. *Orr,* 83 Pa. 332; *Branson* v. *Labrot,* 50 Am. Rep. 193; *Seymour* v. *Cent. Vt. Ry. Co.,* 69 Vt. 555; *Drown* v. *N. E. Tel. & Tel. Co.,* 80 Vt. 1; *Nelson* v. *Branford etc. Co.,* 75 Conn. 548; *McAdams* v. *Cent. Ry. & Elec. Co.,* 67 Conn. 445; *Fox* v. *Manchester et al.,* 183 N. Y. 141. Even though the deceased were a trespasser at the time and place of the accident, that would not preclude recovery. *Seymour* v. *C. V. Co.,* 69 Vt. 555; *Bird* v. *Holbrook,* 4 Bing. 628; *Lynch* v. *Marden,* 1 G. B. 37; *Norris* v. *Litchfield,* 35 N. H. 271; *Beers* v. *Housatonic Ry. Co.,* 19 Conn. 566; *Robinson* v. *Cone,* 22 Vt. 213; *Isbell* v. *N. Y. & N. H. R. R. Co.,* 27 Conn. 393.

The deceased was a minor of the age of thirteen years, and the degree of care and caution he was required to exercise was such as children of like age, capacity and experience might reasonably be expected naturally or ordinarilly to use in like circumstances. *Ill. Cen. Ry. Co.* v. *Slater,* 16 Am. St. Rep. 242; *Collins* v. *South Boston Ry.,* 142 Mass. 301; *Bird* v. *Holbrook,* 4 Bing. 628; *Beers* v. *Housatonic Ry. Co.,* 19 Conn. 566; *Robinson* v. *Cone,* 22 Vt. 213; *Hayes* v. *Colchester Mills,* 69 Vt. 1; *Plumley* v. *Birge,* 124 Mass. 57.

The placing of electric wires in, or in close proximity to, places or structures where persons may rightfully go for business or pleasure constitutes an implied assurance of safety, and an invitation to take hold of or come in contact with such wires, if such persons may, for any reason, choose to do so. And it is also the duty of a party using so deadly an agency to see to it that its wires are at all times so insulated that one coming in contact with them will not be injured. *Perham* v. *Portland Gen. Elec. Co.,* 40 L. R. A. 799, 72 Am. St. Rep. 730; *Griffin* v. *United Elec. Light Co.,* 164 Mass. 492; *Illingsworth* v. *Boston Elec. Light Co.,* 161 Mass. 583; Wood's Railway Law, 1292; Ray's Neg. of Imposed Duties, 33; *Stout* v. *Sioux City etc. Co.,* 2 Dill. 294; *Kansas Cent. etc. Co.* v. *Fitzsimmons,* 31 Am. Rep. 203; *Union Pac. R. Co.* v. *Dunden,* 37 Kan. 1.

HASELTON, J. The action is case, and was brought by the plaintiff as administrator of the estate of George Wetherby, deceased, to recover by virtue of P. S. 2839 and 2840, for the benefit of the next of kin of the intestate, the pecuniary damages suffered by them in consequence of his death claimed to have been caused by the wrongful neglect of the defendant. The case was tried by jury. Verdict and judgment were for the plaintiff. The defendant excepted.

The defendant owns an electric power plant at West Dummerston and transmits power therefrom into the village of Brattleboro over three wires. These wires carry a current of from ten thousand to eleven thousand volts, and are carried across the West River, not far from its conjunction with the Connecticut, along the side of a railroad bridge of the Central Vermont Railway Company under an arrangement with such company. The bridge is an ordinary iron bridge. The manner in which the wires are supported as they cross the river is this: Wooden arms are fastened to what may be called the cross beams of the bridge in two or three places, glass insulators are attached to these arms and the wires are attached to the insulators. Of the three wires the one nearest to the bridge is two feet and three inches, or thereabouts, out and away from any part of the bridge structure, and a little further than that from the outside of the bridge trusses which extend up and constitute a side of the bridge. The wires are a foot and a half apart. Just inside the

trusses of the bridge on each side there extends, for the length of the bridge, a wooden timber construction, called by the witnesses a guide rail or a guard rail, which presents an upper surface of about eight inches in width. There is no planking or other covering over the railroad ties and one crossing the bridge on foot must step from tie to tie or else walk along one of the guard rails just referred to.

August 25, 1907, the intestate, a boy of thirteen years, with other boys as companions, went onto a bridge of the Boston & Maine Railroad near by and then onto the bridge in question. The plaintiff's evidence tended to show that while on this bridge the intestate sat upon the guard rail opposite one of the cross arms referred to and that while sitting there he called to another boy, or. to the other boys, to come and sit with him, and that then in some way he changed his position and got where, by some motion, his foot touched the inside wire and he was almost instantly killed by an electric shock. In order to have made this contact possible he must have got considerably down and away from the guard rail in the direction of the wire. The plaintiff's claim as to the intestate's position is based on the testimony of one of the boys, Jesse Bailey, and is that at the time of the accident the intestate sat straddling the cross beam to which the arm that held the wires was fastened. Possibly Bailey's testimony should be construed to mean that the intestate had got down from the guard rail and out onto the cross beam and was sitting on it with his legs hanging down on either side at the time when he called out. But it is immaterial how this is. Whatever his exact position was and however or when he got into it, he was at the time of the accident, far enough down from the guard rail and out towards the nearest wire so that he could and did touch the wire with his foot.

There is a highway bridge across the West River very close to the railroad bridge in question, and, as has been said, one crossing the railroad bridge must step from tie to tie or walk on a guard timber or rail of about two-thirds of a foot in width. But the plaintiff claims that there was evidence tending to show a use of the railroad bridge for foot travel, and that both the railroad company and the defendant were cognizant of such use. The plaintiff claims that there was evidence of an implied license, an invitation, to the public to make such use of the bridge

and of knowledge on the part of the defendant of such permissive use. In this regard evidence of a certain path leading up onto the railroad track at one end of the bridge and of two posts is much relied on. The plaintiff claims in substance that the case of *Seymour* v. *C. V. R. Co.*, 69 Vt. 555, 38 Atl. 236, is in point here. But if it is to be assumed that, with the knowledge of the defendant, the bridge was used for foot travel by licensees or quasi-licensees of the railroad company, such assumption does not affect the question of liability here. In any view of the evidence the position and doings of the intestate at the time of the accident were not incidental to or related to the use of the bridge for passing and re-passing on foot.

The plaintiff further claims that the railroad company permitted people to use the bridge to fish from and as a place from which to view the surrounding scenery, and permitted children to romp and play upon the bridge, and that such uses were matters of common knowledge and that the defendant was chargeable with knowledge thereof. One witness, William O'Brien, testified that he had several times got down where the intestate was at the time of the accident, that when out on that arm he could look down into the river and, a good many times, could see fish in the river, that men had been there with him, and that they had taken turns in getting out on the cross arm so far that they let go of the bridge, that they did this one at a time. Another witness, Russell H. Briggs, testified that he had seen boys on the bridge, that he didn't know that he had seen them playing, but that he had seen them when he thought they were fishing. William F. Mixer testified that frequently, in the spring when the water was high, he had seen men and boys on the bridge fishing. Jesse Bailey, a boy who was with the intestate at the time of the accident, testified that he had known the bridge for about six years; that he had passed over the bridge a few times always in company with others; that once he had seen a man sitting on the edge of the bridge fishing; and that he had seen boys throwing stones from the end of the bridge. Edwin Wilson, a boy of fourteen years, testified that he had seen people sitting down on the bridge and that he had sat down on it himself, that he had played on the bridge, and that the boys had played "follow the leader" and performed various feats on the bridge, its piers, braces and arms, but not on the arms that held

the electric wires. He testified that the boys did these things up there "lots of times." The above is a condensed statement of all, or substantially all, the evidence tending to show a use of the bridge by men or boys as a place for fishing or playing or climbing, and there is nothing in this evidence, nor anywhere in the transcript, which is referred to, that tends to charge the defendant or the railroad company with knowledge of these various doings. There is no witness who testifies that any of these things were done while any officer or any employee even of the railroad company or of the defendant company was around.

According to all the testimony on the point the bridge was some forty feet above the water, and if it be assumed that, with the knowledge of the defendant, the bridge was used as a foot path, there was nothing in the location of the defendant's wires which tended to render such use dangerous, whatever dangers might in other respects have inhered in such use of this bridge constructed as it was. There was nothing in the wires or in the manner in which they were strung to invite or allure children or others into a position where the current of electricity carried over the wires would be dangerous to them, and the exercise of the high degree of care and prudence required of the defendant in maintaining its lines would not have suggested the likelihood of a contact with the wires by any one. Such an occurrence could not have been reasonably anticipated.

It appeared that the foot of the intestate touched the wire a short distance from the glass insulator, and that at that point the wire was bare of an insulating substance which had original-ly covered it. However, during the direct examination of the plaintiff's first witness, an electrician, the defendant, in con-nection with concessions as to the dangerous and deadly charac-ter of the wire while transmitting the current, made the state-ment that the character of the wire in that respect would be unaffected by the insulation. This statement was made as a part of a concession and, as appears from the transcript, was received as such. In argument in this Court it was said in be-half of the plaintiff that this statement in itself was not a con-cession but a claim, and this is so. But the plaintiff introduced no evidence tending to show that the abrasion of the insulating substance added to the dangerous character of the wire, and

the defendant introduced evidence tending to support this claim and to show that wires carrying the voltage which these wires transmitted might as well be bare and are so by the approved methods in use today. This testimony was in accord with that given by experts in some recent cases that we have examined. But the plaintiff argues that the testimony on the part of the defendant in respect to the purpose and effect of insulation had some tendency to show that in the case of high tension wires, like these under consideration, the matter of injury to a person · by contact therewith might be affected by insulation; and we think the evidence warranted this argument. But by all the relevant cases which we have examined and by the reason under-lying them, the duty of providing insulation, where it exists, is limited to the insulation of wires at points where there is reason to apprehend that a person may come in contact with the wires, and the place of contact under consideration was not such a point. *Drown* v. *New England Telephone & Telegraph Company & Consolidated Lighting Company*, 80 Vt. 1, 66 Atl. 801, in which the imperfect insulation of a wire of the Lighting Company was held to be evidence of negligence on its part was a case in which the imperfect insulation in question was at a point which the plaintiff, a lineman, was liable to touch while in the discharge of his duties as a lineman. That case and the like entitled case reported in 81 Vt. 358, 70 Atl. 599, are not in point here, but are referred to for their discussion of some questions which have been here argued. The defendant refers to *Pierce* v. *Whitcomb*, 48 Vt. 127, 21 Am. Rep. 120, a case in which the defendant, a farmer, was, in the circumstances shown, held not liable for an injury which happened to the plaintiff while he was in a building of the defendant. As, however, the peril there encountered was very different from that met in touching an electric wire carrying a high voltage, and as there the one in-jured was a person of mature years, that case is not of much assistance in the determination of the precise question here. The same may be said of *Brehmer* v. *Lyman*, 71 Vt. 98, 42 Atl. 613, a case also referred to in argument. The general doctrine an-nounced in those cases is not here attacked, but it is claimed that it does not apply to this case. In other states there have been some well considered decisions, the advisory character of which is clear.

*Nelson* v. *Branford Lighting etc. Co.*, 75 Conn. 548, 54 Atl. 303, was an action founded on the death of a boy by coming in contact with an electric wire strung along a side of a highway bridge. The wire in question was seventeen inches west of the west side of the bridge. The boy came in contact with the wire when he was diving, or about to dive, from the bridge into the river. The use of the bridge by boys or young men for the purpose of jumping and diving therefrom into the river was customary and was known to the selectmen of the town and was acquiesced in by them and was known to the defendant company. The court considered these facts, announced it as the law of Connecticut "that the purposes of a highway are not regarded as wholly restricted to serving the right of passage," that one on such a bridge as a sight-seer or for curiosity is rightfully there, that it was for the selectmen and not for the defendant to determine how the bridge should be used; and in view of these and other considerations affirmed a judgment in favor of the plaintiff.

In *Sullivan* v. *Boston etc. Co.*, 156 Mass. 378, 31 N. E. 128, it appeared that the defendant maintained two naked electric wires on top of a coal shed, and that, while the decedent, a boy, was playing ball with other boys, the ball was batted onto the roof in question; that he went after it and while on the roof he came in contact with the wires and was killed. Evidence that the place where the boys were playing ball was frequently used in like manner and that in the course of such games the ball frequently lodged on the roof of the shed and was got in the same manner that the decedent was trying to get the ball at the time in question was offered and excluded and a verdict was directed for the defendant. The Supreme Court held that there was no error in the exclusion of the evidence offered and that the verdict was rightfully directed on the ground that there was no evidence tending to show any violation of duty on the part of the defendant towards the decedent. As to the exclusion of the evidence referred to we note that there was no offer to show that the defendant had any knowledge of the matters offered to be proved.

The case of *Temple* v. *McComb City Electric Light & Power Co.*, 89 Miss. 1, 42 So. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, was this: The defendant company in stringing elec-

tric wires through a thickly settled part of McComb City extended one of its uninsulated wires through a small oak tree which had numerous branches reaching almost to the ground in which the plaintiff, a boy of ten years, and other boys were accustomed to play. While playing among the branches of the tree the plaintiff came in contact with the wire and received an injury. These facts appeared by the declaration which was demurred to. But the Court held that the declaration set out a cause of action, and said: "The immemorial habit of small boys to climb little oak trees filled with abundant branches reaching almost to the ground is a habit which corporations stretching their wires over such trees must take notice of."

In *Mayfield Water & Light Co.* v. *Webb's Admr.*, 33 Ky. Law Rep. 909, 111 S. W. 712, 18 L. R. A. (N. S.) 179, it appeared that the plaintiff in error strung electric light wires on the cross arm of a pole eighteen feet above the ground, and that a Telephone Company maintained a much higher pole near it and that the Telephone Company had two guy wires running from the top of this pole, one above the other, at an angle of about forty-five degrees to the ground, and that these guy wires passed within about eight inches of the electric wire of the Light Company. It further appeared that children of the neighborhood would walk up on the lower guy wire holding onto the upper one with their hands and then slide down. Charles Webb, the intestate of the defendant in error, a little boy eleven years old, while playing in this way touched the electric wire of the Light Company and was instantly killed. There was evidence tending to show that the insulation on the electric light wire was defective and that had it not been so the result would have been the same. In the trial court the child's administrator recovered a verdict. But this verdict was set aside in the Court of Appeals, the Court holding that the Light Company could not have been expected to anticipate that children would do what this child did, and that the doctrine of attractive nuisances did not apply.

*Keefe* v. *Narragansett Electric Lighting Co.*, 21 R. I. 575, 43 Atl. 542, was the case of a little girl eleven years of age who clambered out of a window of her house onto the jet of the house adjoining and, in walking along on such jet, came in contact with electric wires and was injured. The Court held that there

could be no recovery for the injury, giving as one sufficient reason for the holding that the defendant had no reason to anticipate the act of the plaintiff in doing what she did.

In *Sheffield Co.* v. *Morton,* 49 So. 772 (La.), the plaintiff in error maintained an electric wire of high tension along the top of a precipitous bluff about twenty-five feet high. The wire was from three and a half to four feet above the rocky edge of the bluff and some of the evidence tended to show that the wire was immediately over the edge. Morton's intestate, a lad of ten years, in climbing about the bluff came in contact with the wire and was killed. The intestate's administrator recovered a verdict but the Supreme Court held that as matter of law the inherent improbability of the happening was such that the Sheffield Company could not in reason have been expected to guard against it.

In *Graves* v. *Washington Water Power Co.,* 44 Wash. 675, 87 Pac. 956, 11 L. R. A. (N. S.) 452, the plaintiff, a boy of fifteen years, was injured by touching an electric wire of the defendant company while climbing on a pier under a public bridge. The evidence tended to show that boys sometimes climbed the piers to find pigeons' nests and to catch the pigeons, and in playing such games as "follow the leader." It did not appear that the boys were in the habit of climbing where the wires were nor that the defendant company had knowledge of such climbing. In the trial court the plaintiff had judgment in his favor, but in the Supreme Court the judgment was reversed and the cause was remanded with instructions that the action be dismissed.

These decisions of courts in the various parts of the country indicate with substantial unanimity, either affirmatively or negatively, either by inclusion or exclusion, the rule applicable here, a rule at once just, humane and practical, resulting from the application of long settled principles to the now existing necessity for the distribution and use of the dangerous substance, electricity. The business of transmitting electricity, while indispensable to society, must be conducted with a very high regard for the safety of the public, and the thoughtlessness, inexperience, lack of judgment and misjudgment of children of tender years must be taken into account; but the courts cannot make electric companies insurers of the safety of children, more

than of others, nor require of such companies, in the circumstances of their business, a degree of care, prudence, and foresight beyond that which it is given to careful and prudent men to have and exercise in such or like circumstances. In no view of the evidence in the present case could the jury rightly hold the defendant responsible for the death of George Wetherby, and a verdict for the defendant should therefore have been directed. Since, too, it is clear that the situation and circumstances surrounding and causing the accident were on trial fully shown in evidence, it is undesirable that the case should be remanded. The result is that

*The judgment is reversed and judgment is rendered for the defendant to recover its costs.*