Coös,
April 5, 1932.

HENRY DILLON, *Adm'r*, *v.* TWIN STATE GAS & ELECTRIC COMPANY.

*Matthew J. Ryan* (by brief and orally), for the plaintiff.

*Hughes & Burns* and *Edmund Sullivan* (*Messrs. Hughes* and *Sullivan* orally), for the defendant.

ALLEN, J. The bridge was in the compact part of the city. It was in evidence that at one time the defendant's construction foreman had complained to the city marshal about its use by boys as a playground and in his complaint had referred to the defendant's wires. The only wires were those over the bridge superstructure. From this evidence and that relating to the extent of the practice for boys to climb up to and upon the horizontal girders an inference that the defendant had notice of the practice was reasonable. The occasion for the complaint might be found due to apprehension of danger from proximity to the wires. This only came about from climbing upon the upper framework of the bridge. There was no suggestion of danger in any use of the bridge confined to the floor level.

The use of the girders brought the wires leading to the lamp close to those making the use, and as to them it was in effect the same as though the wires were near the floor of the bridge. While the current in the wires over the bridge was mechanically shut off during the daytime, other wires carried a commercial current, and there was a risk from many causes of the energizing of the bridge wires at any time. It is claimed that these causes could not be overcome or prevented. If they could not, their consequences might be. Having notice of the use made of the girders and knowing the chance of the wires becoming charged at any time, the defendant may not say that it was not called upon to take action until the chance happened. Due care demanded reasonable measures to forestall the consequences of a chance current if the chance was too likely to occur to be ignored.

The evidence tended to show that changes in the construction and arrangement of the lamp and its wires were practical. So that the wires running from the post to the lamp would be out of the way of one on the girders, a bracket carrying the wires inside it and specially

insulated wires running down from a post to be set up on the outer side of the girder were testified to as suitable measures and devices which would avoid or lessen the danger of contact. The evidence to the contrary is not conclusive.

The defendant, however, makes the contention that it owed no duty of care to those not using the bridge in a rightful manner to make their wrongful use safe. If a duty might arise towards such a person as a workman painting the girders, yet it says there was none towards a boy in the decedent's position of climbing and mounting the girders without right.

The present state of the law here in force does not support the claim. The duty not to carelessly intervene against known trespassers is not doubtful, and known trespassers include those whose presence should in reason be anticipated. *McCaffrey* v. *Company*, 80 N. H. 45, 54, and cases cited. Knowledge or notice of actual presence may be necessary to give notice of probable later presence, but when the latter notice is once acquired, the duty of care may not be avoided by ignorance of actual presence thereafter. The duty not to intervene in such cases may call for active conduct of care as well as for the avoidance of active conduct of negligence. *McCaffrey* v. *Company*, *supra*, 54, 55; *Castonguay* v. *Company*, 83 N. H. 1, 6. The care owing to those probably to be present relates to the time when notice of the probability is received. There is then a relationship so as to impose the duty in advance of actual presence. To wait until actual presence before using care would defeat the duty to expected trespassers before their presence became known. The duty is in line with the general principle of care in anticipating harm to all likely to be exposed to a danger for which the person owing the duty is responsible.

When it is said that care is owing only towards those with whom there is a relationship, the problem of determining if a relationship exists remains. It is not solved by rigid and arbitrary classifications between those entitled and those not entitled to receive care. "The rule of reasonable conduct is applied in this jurisdiction . . . to show the extent of an existing relation . . . It is a reasonable rule because it only calls for reasonable conduct." *McCaffrey* v. *Company*, *supra*, 51. And the rule goes even farther and serves to show the existence of a relation as well as its extent. Reasonableness is as well a test of the requirement of conduct, as a matter of law, as of its character, as a matter of fact.

A rule that no care is due one engaged in wrongful conduct is unreasonable without substantial qualifications. The duty of care

towards a known trespasser has been developed through this test of what reasonableness requires. It is now as well settled as the lack of the duty towards those whose presence is not to be anticipated, because of its unreasonableness. To deny liability to the known trespasser is reasonably regarded as a greater injustice to him than to impose it is on the negligent defendant. It is not an enforcement of moral obligation by terming the obligation a legal duty, but it is a rule of liability reasonably invoked.

No one should profit from his wrong or take advantage of it; wrongful conduct is not to be excused; and one who does wrong should suffer its consequences. But the law of civil liability has no favor for penalties, and a policy of reasonable accountability has marked its efforts to regulate conduct. Discouragement of wrong, by depriving the wrongdoer of protection while engaged in its commission, should not go so far as to lead to the promotion of harmful or indifferent conduct towards him. Reasonable adjustment which is best adapted to secure proper conduct from all is the law's objective.

While one doing wrong must suffer its consequences, consequences are not in the law wholly determined by the natural principles of cause and effect. Logic may say that if the wrong were not committed, exposure to danger from the defendant's conduct would not be incurred. But the law limits liability for consequences to such as it terms natural and proximate, leaving others as matters of occasion. The dividing line is ultimately one of reasonableness. In the suffering of consequences for a wrong, reasonable rules of the extent of liability for them are adopted, and at the same time reasonable rules limiting the exemption of liability of others for injury done during the commission of the sufferer's wrong.

In passing upon the issue of reasonableness, relative and comparative considerations are made. In general, when the danger is great and the wrongful conduct of the injured person is not serious, it is reasonable for the law to find a relationship and to impose a duty of protection. A defendant in his own interest causing dangerous forces to operate or dangerous conditions to exist should reasonably protect those likely to be exposed to them and not reasonably in fault for the exposure.

Standards of reasonableness may change in changing conditions and changing attitudes towards the conditions. But the principle of reasonable conduct remains unchanged as the test of civil liability in the absence of special rules. It is because of such changes and because of the elements of reasonableness which resolve into opinion,

that differences and conflict of rules come about. But it is a difference of application and not of principle.

The foregoing discussion does not lead to any serious conflict with the reasoning of the majority opinion in the *McCaffrey* case. Proof of knowledge of a habit of others to gather near the wires without care for their protection "might present a case of active intervention", it is therein said. The decision rests on the two points that in grasping the defendant's wire above his head the plaintiff was guilty of an "unauthorized interference" with its property and that notice that the tree climbed was likely to be climbed could not be found.

On this latter point it seems reasonable to say that a tendency of boys to climb trees does not indicate a probability that every tree will be climbed. The tree in question must be such a tree as naturally invites climbing, to justify the finding that the defendant has notice of the climbing. ".... the duty of providing insulation, where it exists, is limited to the insulation of wires at points where there is reason to apprehend that a person may come in contact with the wires, ..." *Wetherby's Adm'r* v. *Company*, 83 Vt. 189. The issue of the sufficiency of the evidence in the *McCaffrey* case to show whether the tree was one up which climbing was to be expected, is not here of consequence. It is an issue essentially of fact, and on the point the case is without importance as a precedent. The situation was found to be like that in *Devost* v. *Company*, 79 N. H. 411, where the defendant had no notice of the use made of its property.

On the point of unauthorized interference, it is difficult to see wherein the defendant's rights were infringed. Its property was not damaged, and no possession, control or authority over it was attempted to be taken or exercised. Contacts are not necessarily wrongful. Leaning against a building, patting an animal, and normal pressure in a crowd are not ordinarily infractions of others' rights. As said in the dissenting opinion in the case, the reasonableness of the conduct determines its quality.

If the theory of the private ownership of space above one's land makes a traveler by air a trespasser towards the owners over whose lands he passes, it is because it stands for an incident of ownership still adapted "to the state of the country." The policy of the law may become strong enough in the validation of normal contacts to regulate such use and make it lawful. In any event, when the use, as in taking hold of something to prevent falling, is non-possessory, its reasonableness would seem to make it rightful. The case of *Croteau* v. *Company*, 79 N. H. 515, is not inconsistent with this position. The

plaintiff there exercised control over the defendant's property and assumed to do its business. It could not be found reasonable because there was no fair occasion for him to act as he did.

The *McCaffrey* and *Devost* cases are undertaken to be distinguished from *Thompson* v. *Company*, 77 N. H. 92, by treating the plaintiff in the latter case as engaged in rightful conduct when injured. He was playing in a highway and in his play leaned against a pole. If a traveler's right of highway use may go so far as to make a playground out of it, the opinion in the case declares the right only "so far as the defendant is concerned." But conceding a right to play on the highway surface and no right to mount the framework of a bridge in play, the defendant here may not be relieved from duty towards those of whose probable presence it had notice, however their conduct is to be regarded.

The defendant's position is less favorable than in the *McCaffrey* case where the plaintiff's contact with the defendant's property was intentional. The decedent here lost his balance and took hold of a wire to keep from falling. In doing this his conduct was instinctive and automatic. Contact with the wire was thus accidental and could not in any view be held wrongful. *Puchlopek* v. *Company*, 82 N. H. 440, 442; *Commonwealth &c. Co.* v. *Melville*, 210 Ill. 70. If he was making a wrongful use of the bridge, absence of relationship between him and the defendant is not thereby denoted.

If A's conduct towards B is wrongful, it should also be wrongful towards C if the only difference between B and C is that B is not, while C is, engaged in a wrong unrelated to A. C's wrong is not legally causal of his injury merely if it places him in the same position as B is in, and he should recover as well as B. Reasonable care is due both. The only qualification is that C's wrong might be a circumstance affecting A's care in his case. It may be that in reasonable conduct one will use less care towards wrongdoers than others. But the duty to use such care as the circumstances demand is not modified, and the difference is an issue of fact and not of law. When the injured party's wrong is towards a third person, the defendant's exemption from care would amount to the inurement of the wrong to his advantage.

If on a private road two stolen cars meet, one driven by its thief and with a passenger ignorant of the theft, and the other driven by an innocent purchaser from its thief and with a passenger aware of its theft, the varying wrongs of the drivers and passengers towards the owners of the cars would not be enough in any instance to affect

their respective rights and duties to receive and use care. If the differences are circumstances affecting care, the standard of duty to use the care reasonably required is not lowered. Their wrongs towards the owners are not the causes of injury from negligence among themselves or from others, and recovery for the injury gives no profit from their own wrongdoing.

"The object of the law being to safeguard and protect the various rights in land, it is obviously going quite far enough to limit the immunity to the one whose rights have been invaded. . Nor does logic or justice require more. A trespass is an injury to the possession; and as it is only he whose possession is disturbed who can sue therefor, so it should be that he, alone, could assert the unlawful invasion when suit is brought by an injured trespasser. One should not be allowed 'to defend an indefensible act' by showing that the party injured was engaged in doing something which, as to a third person, was unlawful." *Humphrey* v. *Company*, 100 Vt. 414.

Authority is understood to be nearly unanimous in support of this view. *Nelson* v. *Company*, 75 Conn. 548; *Boutlier* v. *Malden*, 226 Mass. 479; *Guinn* v. *Company*, 72 N. J. L. 276; *Daltry* v. *Company*, 208 Pa. St. 403; *Cox* v. *Company*, 80 W. Va. 295; *Benton* v. *Company*, 165 N. C. 354; *Johnson* v. *Company*, 4 Ga. App. 742; *Birmingham &c. Co.* v. *Cockrum*, 179 Ala. 372; *Ft. Wayne &c. Co.* v. *Stark*, 74 Ind. App. 669; *Williams* v. *Company*, 274 Mo. 1; *Lipovac* v. *Company*, 202 Ia. 517; *Edwards* v. *Kansas City*, 104 Kan. 684; *New Omaha &c. Co.* v. *Johnson*, 67 Neb. 393; *Meyer* v. *Company*, 151 Wis. 279; *Southwestern &c. Co.* v. *Bruce*, 89 Ark. 581; *Talkington* v. *Company*, 96 Wash. 386; *Ellis* v. *Company*, 41 Ida. 106; *Davoust* v. *Alameda*, 149 Cal. 69.

The circumstances of the decedent's death give rise to an unusual issue of its cause. In leaning over from the girder and losing his balance he was entitled to no protection from the defendant to keep from falling. Its only liability was in exposing him to the danger of charged wires. If but for the current in the wires he would have fallen down on the floor of the bridge or into the river, he would without doubt have been either killed or seriously injured. Although he died from electrocution, yet if by reason of his preceding loss of balance he was bound to fall except for the intervention of the current, he either did not have long to live or was to be maimed. In such an outcome of his loss of balance the defendant deprived him, not of a life of normal expectancy, but of one too short to be given pecuniary allowance, in one alternative, and not of normal, but of limited, earning capacity, in the other.

If it were found that he would have thus fallen with death probably resulting, the defendant would not be liable unless for conscious suffering found to have been sustained from the shock. In that situation his life or earning capacity had no value. To constitute actionable negligence there must be damage, and damage is limited to those elements the statute prescribes.

If it should be found that but for the current he would have fallen with serious injury, then the loss of life or earning capacity resulting from the electrocution would be measured by its value in such injured condition. Evidence that he would be crippled would be taken into account in the same manner as though he had already been crippled.

His probable future but for the current thus bears on liability as well as damages. Whether the shock from the current threw him back on the girder or whether he would have recovered his balance, with or without the aid of the wire he took hold of if it had not been charged, are issues of fact, as to which the evidence as it stands may lead to different conclusions.

*Exception overruled.*

All concurred.