## FREDERICKS v PITTSBURGH & LAKE ERIE RD CO

Ohio Appeals, 7th Dist, Mahoning Co

No 2370. Decided April 9, 1937

W. L. Countryman, Youngstown, for plaintiff-appellee.

Henderson, Wilson, Wyatt & Ranz, Youngstown, for defendant-appellant.

## OPINION

By NICHOLS, J.

W. E. Fredericks brought his action in the Common Pleas Court of Mahoning County against The Pittsburgh and Lake Erie Railroad Co. seeking to recover damages for injuries alleged to have been suffered by him when an automobile truck operated by him and loaded with five and one-half to six tons of limestone collided with one of the railroad cars in a train operated by the railroad company over its tracks where the same crossed the public highway leading from Lowellville to Struthers.

In his original petition and first amended petition the plaintiff based his action upon the negligence of the railroad company in having constructed and maintained its tracks across the highway in such manner as to make the same obscure by bringing its tracks out of a deep cut and surrounded by a dense growth of bushes and tall trees along its right of way and to the edge of the highway, and in that the defendant failed and neglected to place and maintain a warning at such crossing at a point where the same would be effective, whereby and by means of which travelers approaching the crossing might be warned of the presence of a train on or moving toward the crossing, and that defendant had no light or warning of any kind at the crossing which was effective in, or capable of, advising persons in the lawful use of the highway of the presence of or the approaching of a train.

It was the further claim of plaintiff that by reason of the conditions surrounding this crossing, the defendant, in the exercise of ordinary care toward persons using the public highway, should have maintained a watchman at the crossing, especially in the night season, and that defendant's cars, which were placed and stopped by it upon and across the public highway, without light and without warning of any kind, constituted a nuisance in and to the highway

In his original petition and first amended petition plaintiff specifically set out certain injuries alleged to have been received by him as a result of the truck operated by him coming into collision with the train of defendant.

Motions having been interposed to the original petition and to the first amended petition, which were in part sustained by the trial court, plaintiff, upon leave, filed his second amended petition against defendant, alleging that the defendant negligently and carelessly constructed and maintained the approach to its tracks to and over this crossing at a sharp angle and out of a deep cut, surrounded by a dense growth of bushes and trees extending to the edge of the highway making it necessary for those traveling westerly thereon to come near to the tracks in order to be able to see, to the left, an approaching train, and that the conditions developed and maintained by defendant at this crossing made it impossible to see cars or a train moving toward the crossing until a traveler on the highway is at the tracks, and that by reason of these conditions the crossing had been rendered one of unusual danger, and as a result of which it was claimed that, in the exercise of ordinary care, defendant should have maintained a watchman with a warning light, or should have maintained a visible or distinguishable mechanical warning light, or have taken precaution of some kind to warn travelers on the highway of the occupancy defendant was making of the highway, all of which defendant failed and neglected to do. Plaintiff further alleged that the light equipment which had been placed by defendant at this intersection was indistinguishable and ineffective as a warning; that at the time of the collision the light was not operating; that at the time plaintiff approached the crossing the defendant had placed a hidden danger in the public highway, by placing thereon certain cars which were without light of any kind and the place of danger thus created in the highway was in no way made apparent by defendant, and by reason of all of which plaintiff was prevented from being afforded reasonable knowledge of the use being made of the crossing at the time plaintiff approached the same, and prevented from having a reasonable opportunity to act in such situation for his own safety, whereby his motor truck was caused to come into collision with one of defendant's railway cars and he to be precipitated forcibly against parts of his truck.

In his second amended petition, after setting forth the above facts as the cause for plaintiff's truck coming into collision with defendant's railway car, causing him to be precipitated forcibly against parts of his truck, plaintiff, for the first time, made the further allegation:

"Further plaintiff says that before plaintiff could extricate himself after this collision and while his truck was in contact with said railroad car said defendant company started its train without warning or notice to plaintiff, which movement suddenly pulled plaintiff's truck to one side and further threw him about within it. Plaintiff says that said defendant knew of said collision and his situation before it started the movement of its train and was guilty of negligence in starting said train under these conditions."

After all of the above allegations plaintiff stated, in his second amended petition, "that as a direct and proximate result of the negligence, averred hereinbefore," he received certain injuries, describing these injuries in the identical language by which they were alleged in his original petition and first amended petition. It is, therefore, noted that plaintiff alleges in his second amended petition no other or greater disability by reason of the allegations setting up the doctrine of "last clear chance" than had been alleged to have been received by him as a result of his original or so-called "first collision" with the railroad car of defendant. We call attention to these allegations as to plaintiff's injuries for the reason that after the defendant had answered denying any negligence upon its part, and the cause having come on for trial and counsel for plaintiff having made his opening statement to the jury and having been given permission to supplement his opening statement and having so supplemented the same; defendant demurred to the opening statement of counsel for the reason that the same does not state facts sufficient to constitute a cause of action, and for the reason that the opening statement of counsel for plaintiff demonstrates that the plaintiff himself was guilty of negligence in the situation directly contributing to bringing about his own injuries. The court sustained this demurrer of defendant as to the so-called "first collision" and allowed the case to go to the jury solely upon the claim of plaintiff under the doctrine of "last clear chance," overruling defendant's demurrer

in that respect to which exception was taken by defendant.

The case having proceeded to trial solely upon the issue of "last clear chance" and motion having been made by defendant for directed verdict at the close of plaintiff's case, and at the close of all the evidence, both of which motions were overruled by the trial court and the cause submitted to the jury after argument and charge of the court, the jury returned a verdict in favor of plaintiff in the amount of $5,000.00. The trial court overruled defendant's motion for a new trial and rendered judgment on the verdict.

Defendant is here seeking to reverse the judgment of the Common Pleas Court upon sixteen grounds, specifically set forth in the brief of appellant. In oral argument and brief appellant's contentions relate, first, to the sufficiency of the evidence, it being claimed not only that the verdict is manifestly against the weight of the evidence, but that the trial court erred in overruling defendant's motions for directed verdict, and that defendant is entitled to final judgment in this court. Appellant further claims that the trial court erred in the exclusion of certain evidence offered by defendant; in the admission of incompetent evidence offered by plaintiff and objected to and excepted to by defendant at the time; erred in refusing to give defendant's request to the jury before argument; and erred in its general charge to the jury.

We have carefully examined all of the evidence in this case and find that the verdict of the jury is so manifestly against the weight of the evidence as to shock the conscience of the court; and we have no difficulty in finding that manifest justice has not been done and that the judgment of the trial court should be reversed. We find no error in the action of the trial court wherein the court permitted the case to proceed to trial after the opening statement of counsel solely upon the issues of "last clear chance", nor did the trial court err in permitting counsel for plaintiff to supplement his opening statement to the jury.

We further find from our examination of the record in this case, after considering the evidence in the light most favorable to plaintiff and conceding to be true the testimony of plaintiff relating to the only notice had by any of the employes of defendant company as to plaintiff being in a perilous situation in his truck while the same was in contact with the train of defendant after plaintiff had collided there-

with by reason of his own negligence, yet there is absolutely no proof from which the jury could have reasonably found that the defendant, after notice of plaintiff's perilous situation, could, by the exercise of ordinary care, have prevented further injury to plaintiff. The only testimony showing any notice to defendant of plaintiff's perilous position is that of the plaintiff himself, who gave the following account as to how the collision took place:

"A. I was traveling at a rate of speed, I would say fifteen miles an hour, and there was a parked car up within fifty-five or sixty feet of the crossing, and I dimmed my lights for this car, and after getting by this automobile on my right hand side, I reached down to switch on my bright lights, which were connected with the ignition switch, and after turning on my bright lights they revealed that the crossing was blocked. I immediately glanced up in the direction of the signal as I was stooped over in the truck turning on the bright lights. * * * I immediately then applied my brakes and feeling the truck starting to slow down until it hit a spot there that was just like glass, and I immediately switched my truck from the right hand side of the road to the left hand side of the road to get off the slippery spot, and skinned by the signal post, hitting the car that was across the highway, or parallel across the highway. When I hit the car it throwed me up over the steering wheel, throwed me on the same angle in which I was going, and up against the signal post itself, as I had no door on that side of my truck. After the truck stopped I sort of regained my senses and looked about to see what it was all about, and I noticed the caboose back in this cut, off to my left hand side. I was asked then, 'Are you hurt, buddy? And I says, 'I think my truck is fastened on to your train,' and he said, 'That's tough luck,' and just at that point * * * the train started up and jerked me around in the truck to my right, and I felt this severe pain come across my back, the middle and lower part of my back, and about that same time there was a man on my right hand side of the truck, with his head and shoulders in and had hold of me. He said, 'Are you hurt?' I said, 'Yes, I think I am,' and at that point he jumped off the running board of my truck and run out in back of the caboose and the caboose was just clearing the crossing and he hollered to this person in the top of the caboose—I don't know what you call

that up above there—* * *. He said, 'For C's sake, aren't you going to stop this train to see if this man is hurt or killed?' This same man answered back, 'We know it, but H—, there is nothing we can do about it,' and the train continued to go on down the track to my right."

The plaintiff is not corroborated in any way as to the statements he claims to have been made by some person in the cupola of the caboose, and the overwhelming weight of the testimony shows that no such statements were made by any employe of the company on this train. However, for the purpose of this decision, if all that has been testified to by plaintiff be conceded to be true, it would go no farther than to show that just at the time plaintiff informed someone in the caboose that he thought his truck was fastened on the train, the train started up. There is no evidence in the record from which reasonable minds could conclude that there was any opportunity for the defendant to do anything to prevent the train starting after the alleged conversation. True, the evidence shows that the train was equipped with air-brakes which could be operated from the caboose, but there is no showing that the flagman or any employe on the caboose was in position to operate the air-brakes in time to prevent the starting of the train, or to do anything else to prevent the starting of the train. The man, referred to in plaintiff's recital as having his head and shoulders in the truck ahold of plaintiff, was produced as a witness by the defense and testified that the train was moving when plaintiff collided with the pole upon which was operated a "wig-wag" warning light. This man further testified that he arrived on the scene before the train stopped; that plaintiff's truck was not in contact with the train at any time after it stopped; that plaintiff did not converse with anyone on the train, and that the person on the train did not make any statement that he knew there had been an accident. This witness did testify that after the train had started and the caboose had pulled up over the crossing, he yelled at the man standing in the back of the caboose, informing him that there had been an accident, but that no such reply, as claimed by plaintiff, was made by the man on the caboose. The testimony clearly shows that at the time plaintiff claims he collided with the train it was moving slowly preparatory to stopping for the purpose of switching on to another track;

that it did stop for a period of three or four minutes and then proceeded in a northerly direction after switching on to a siding. The man referred to by plaintiff in his recital of the manner in which the accident occurred, testified that the truck, at the time the train started, was three or four feet away from the track; that the plaintiff was then out of the truck and the truck was against the light pole.

It furthermore appears from the record that upon two occasions prior to the trial the plaintiff had given statements entirely contradictory to his claim of injury under the issue of "last clear chance." Previous to the trial his deposition had been taken, at which time he was asked, under oath, to state the facts relating to the collision, and he made no reference to his truck having been moved by the train after his so-called "first collision" therewith. At the trial, plaintiff was asked the following question:

"Q. Did you ever testify under oath before that you had no such conversation?" (Referring to the alleged conversation with the man on the caboose).

To this question plaintiff replied:
"A. Well, there was some things I thought maybe I shouldn't let out."

The record further shows the following:
"Even though you were asked if you had any conversation, you deliberately withheld or hid the information, is that true?
A. Yes.
Q. So the jury understand, you were under oath before and you were asked if you had any other conversation, and you knew you had and you deliberately withheld it?
A. I understood it wasn't to say every detail of my accident."

Within about five days after the accident plaintiff gave a statement to the claim agent of the railroad company, the statement being taken down by a stenographer and testified to by him. This statement is contradictory in many respects to the testimony given by the plaintiff at the trial and shows that at the time the statement was taken no claim was made by plaintiff that the train started up and moved his truck after he first collided therewith.

Another traveler on the highway appeared on the scene just after the first collision of plaintiff's truck with the train or with the light pole, and this traveler testified that plaintiff's truck was not in contact with the train after the first collision, but was about three or four feet from the train.

The flagman, with whom plaintiff claims to have had the conversation in which notice was given that the truck was in contact with the train, denied specifically that he was in the cupola of the caboose at the time; denies that he had any conversation with plaintiff; denied any knowledge that plaintiff was in a perilous situation, as claimed by plaintiff, and testified that the only conversation had with him was by a man who yelled at him as the caboose went over the highway, from which he was informed that there had been an accident and he understood the man to say that the light wasn't working.

The flagman further testified that the "wig-wag" light was operating properly; that just before the train stopped for the switch he got off the caboose and went to the rear of the train in furtherance of his duties as flagman, and that he got back on the train just as it was starting to pull on to the siding; and that he only learned of the accident when he was standing on the rear platform of the caboose as it passed over the crossing.

Ohio has adopted the rule that defendant is liable for the failure to exercise ordinary care to prevent injury to plaintiff after actual notice of the perilous situation in which plaintiff had placed himself by reason of his own negligence.

After most careful consideration of all the evidence in this case, we conclude that there is no evidence in the record from which reasonable minds could find that the defendant was guilty of any negligence under the issue of "last clear chance," after knowledge of plaintiff's alleged perilous situation, and it follows that the trial court erred in overruling the motion of the defendant made at the conclusion of all the evidence in the case for directed verdict in its favor, and that substantial justice has not been done in the trial court, and that this court should now render the judgment for defendant which should have been rendered in the trial court.

In view of the decision reached by this court we deem it unnecessary to pass upon other errors alleged on behalf of defendant, but an interesting problem of causation as related to damages is presented in this case and deserves, we think, some comment here. We have referred to the fact that in the original petition and first amended

petition of plaintiff, he set forth that he had received specific injuries resulting from his collision with the train of defendant and which injuries it is apparent from the opening statement of plaintiff's counsel to the jury were due to the sole negligence of plaintiff. His second amended petition sets forth an issue of "last clear chance," but he alleges in the second amended petition the same specific injuries, and no more, than he had alleged as having resulted from his original negligent conduct in the operation of his motor truck. His original petition and first amended petition were offered and received in evidence. The only bit of testimony presented by plaintiff as to any additional injuries received by him by reason of his truck being in contact with the train of defendant and pulled to the right a few feet when the train started, consists of his statement that at that time he felt a severe pain in his back. A picture of plaintiff's truck is in evidence, from which it plainly appears that there is no damage to the cab wherein the plaintiff claims to have been seated at the time the train started. What damages, then, would plaintiff have been entitled to receive in this case had the evidence been sufficient to sustain his issue of "last clear chance"?

Sec 432 of the Restatement of Torts reads as follows:

"(1) Except as stated in Subsection (2) the actor's negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been negligent.

"(2) If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be held by the jury to be a substantial factor in bringing it about."

Subsection 2 gives effect to the rule which imposes joint and several liability upon joint or concurrent tort feasors for the results of their combined misconduct, and applies not only when the second force which is operating simultaneously with the force set in motion by the defendant's negligence is generated by the negligent conduct of a third person, but also when it is generated by an innocent act of a third person or when its origin is unknown. It would appear that subsection (2) modifies subsection (1) only when the two forces operate "simultaneously."

If the rule laid down in §432 of the Restatement of Torts were to be applied in the case at bar, there could be no recovery in this action, but we think the trial court adopted the correct rule applicable to the case at bar when it charged ▓▓▓▓ that the jury in the event that it found for plaintiff under the issue of "last clear chance", would award damages only for such injuries as plaintiff received after the first collision and due solely to the starting of the train after actual knowledge by defendant of plaintiff's perilous situation. It seems clear from the record that there is no evidence in this case upon which the jury could base a verdict in the amount of $5,000.00, and that in any event this verdict was so manifestly against the weight of the evidence as to imply that the verdict was the result of passion and prejudice.

The case of Dillon v Twin State Gas & Electric Co., 85 N. H. 449, 163 Atl. 111, is somewhat in point. In that case, a boy standing upon an overhead beam of a bridge, lost his balance and was falling to rocks in the river bed below. Serious injury, if not death, was certain to result when he was caught upon the defendant's wires and electrocuted. The maintenance of the wires in a charged condition was found to be wrongful as to him. The decision allowed damages for only such sum as his prospects for life and health were' worth at the moment when the defendant's fault became causal. This case stands for the proposition that in the absence of a concurrent wrong, a negligent party is not liable beyond the damages shown to have been caused by his negligence, and that in an action for injury to the person, the injured person's danger from other innocent factors at the time of harm must be considered. It will be noted that this rule is at variance with that set forth in subsection 2 of §432 of the Restatement of Torts. See the article of Chief Justice Peaslee of the New Hampshire Supreme Court treating upon the last cited case and entitled "Multiple Causation and Damage," 47 Harv. L.R. 1127.

From the evidence in the case at bar, it is quite difficult to understand how the jury in any event could have found for plaintiff in any substantial amount had there been any evidence warranting a finding under the issue of "last clear chance." The judgment of the trial court is reversed and final judgment entered for defendant.

Judgment reversed and final judgment for defendant.

ROBERTS, PJ, and CARTER, J, concur.