Hillsborough,  
Dec. 1, 1942. } No. 3364.

Grace E. Labor, *Adm'x* v. Public Service Company of New Hampshire.

*Murchie & Murchie* and *Howard B. Lane* (*Mr. Alexander Murchie* orally), for the plaintiff.

*Demond, Sulloway, Piper & Jones* and *Warren, Wilson, Mc-Laughlin & Wiggin* (*Mr. Piper* orally), for the defendant.

MARBLE, J. The accident happened at a curve on the road leading from Deering to Hillsborough near the junction of that road with the road leading to Francestown. The plaintiff's intestate was proceeding in a northeasterly direction toward Hillsborough. He was riding alone and there were no eyewitnesses to the accident. The pole in question was situated at a point about four feet north of the northerly line of the traveled portion of the highway and close to a stonewall which ran substantially parallel with the road.

The defendant's evidence tended to prove that the car, driven at a high rate of speed, skidded at the curve and ran into the stonewall at a point ten feet or more west of the pole, which it did not touch. The automobile was found tipped over on its side lying crosswise of the road three or four feet distant from the pole and facing westward. The front end was substantially intact, but the left side near the driver's seat was badly damaged. The photographs of the car taken after the accident indicate a very severe impact at that point. The plaintiff contends that this damage and the death of her intestate were occasioned by contact with the pole.

It is the general rule that "a negligent defendant cannot be held liable for damage which would have resulted without his fault" (Peaslee, "Multiple Causation and Damage," 47 Harv. Law Rev. 1127, 1129), and if the plaintiff's contention were true, a problem similar to that discussed in the case of *Dillon* v. *Company*, 85 N. H. 449, 456, 457, would be presented; for even if no pole had been erected there at all, the decedent could not have escaped a disastrous crash against the stonewall.

The principal evidence in support of the plaintiff's contention comes from the decedent's father, who visited the scene of the accident on the following morning. He describes the skid marks as follows: "It appeared he had cramped the wheel and the wheel was kind of going sideways . . . it [the car] rubbed on both sides — both sides of the rut, see? . . . From there it looked as though it had come . . . in contact with the pole, right up against the pole, the spot. . . . From the rut it was right to the pole. From the pole ; . . an almost right angle turn." He noticed that rocks had been knocked off the wall. "It looked," he said, "like a few might have been knocked out for a path. I wouldn't say it was a path."

The pole was not broken, and the only prominent marks, save two, which appear on it, as disclosed by various photographs, were obviously made by a lineman's spikes. There was testimony to the effect that the two marks above referred to were made by a canthook and binding chain when the pole was hauled there for installation.

A police officer who investigated the accident was asked if he saw any marks on the pole. He answered: "We saw no marks upon it. That is, no fresh marks. . . . Oh, there was two marks or so on the pole, but nothing from the impact of an automobile that we could distinguish." Other witnesses testified to the same effect.

The "spot" mentioned by the decedent's father may well have been the so-called canthook mark, which was a jagged horizontal scar about six inches long located on the westerly side of the pole four or five feet above its base. The record does not disclose what mark plaintiff's counsel had in mind when he inquired of a witness: "Did you see the mark on the outside of the pole — did you see that rough place where there was a splinter raised?" And again: "Do you remember the splinter of a piece about — oh, four feet up — where apparently something had rubbed against it?" Both questions were answered in the negative.

The decedent's father testified: "The only thing I could notice on the pole was a little paint like that that came off the door, I should say, of the car. . . . [It was] probably three inches long and kind of faded out like — probably half an inch, three-quarters of an inch wide. . . . It looked kind of a chalk mark like, or a rub mark." No one else testified to seeing paint on the pole, and nothing resembling a paint mark is visible in the photographs.

The witness further stated that he examined the car and discovered small pieces of wood "in the support near the top, where

it holds the top on . . . right by the corner of the windshield."
When asked, "How big were those pieces of wood?" he replied:
"Well, they were very small pieces. You could just see where it
scraped. . . . It was just small pieces. It was no large chunk, but
it was enough to show it hit something and there was some wood in
there." He did not state that these slivers were of the same kind of
wood (presumably cedar) as that of the pole, and the photographs
indicate that the wooden frame of the car, at the point where it had
been attached to the upper left-hand corner of the windshield, was
broken.

The plaintiff accompanied the decedent's father to the scene of
the accident. She testified that she noticed up by the windshield
of the car a "small sliver of wood," "some parts" of which "showed
the same color" as that of the pole. The pole was unpainted.
She also stated that she saw "a car track leading from the Deering
[road] down to the ruts of the Francestown road to the pole," and
that she observed a "small mark" on the pole.

Defendant's counsel thus summarize their position on the issue
in question: "We confidently submit that the force of a blow suf-
ficient to cause the damage done to the left-hand side of that car,
to turn it around facing toward the west and turn it on its side
would necessarily have broken that pole. . . . Instead, we find no
evidence even of a splinter on the pole. The only splinters found
were found at the top of the windshield at the point where the
wooden frame of the top was broken, which could have and probably
did come from the broken frame."

It may be conceded that these assertions are not completely
demonstrable as a matter of law. Nevertheless, the plaintiff's
contention is effectually refuted by the "indisputable physical
facts." *Brown* v. *Mailhot*, 89 N. H. 240; *Lavigne* v. *Nelson*, 91
N. H. 304, 308. For it is certain that the pole would have shown
unmistakable evidence of a violent impact if the decedent's car
had struck it as the plaintiff claims.

The plaintiff assumed the burden of proving that the pole was a
substantial factor in causing her intestate's death. Smith, "Legal
Cause in Actions of Tort," 25 Harv. Law Rev. 303, 309; Restate-
ment, Torts, *s.* 431. The evidence falls far short of establishing
that essential fact.

The motion for a directed verdict should have been granted.

*Judgment for the defendant.*

All concurred.